[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15681

_____

D.C. Docket No. 0:12-cv-61528-RNS

BRYAN RAY,
on behalf of himself and all others similarly situated,
GRETEL DORTA, et al.,

Plaintiffs - Appellants,

versus

SPIRIT AIRLINES, INC.,
a Delaware corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 23, 2014)

Before HULL, MARCUS and HILL, Circuit Judges.

MARCUS, Circuit Judge:

Plaintiffs commenced this civil suit against Spirit Airlines, Inc. ("Spirit")

under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.

§§ 1961-68, alleging that Spirit conducted an enterprise by means of racketeering activity -- here, two or more predicate acts of mail and wire fraud involving the concealment and misrepresentation of airfares and user fees. The district court dismissed the action, ruling that comprehensive federal regulation of the airline industry precluded Plaintiffs' civil RICO claims. We disagree. Because federal laws do not preempt other federal laws, subsequent legislation could preclude Plaintiffs' claims only if Congress had repealed the provisions of RICO, at least insofar as they authorized Plaintiffs' actions. Congress did not do so expressly through the Airline Deregulation Act of 1978 (ADA), Pub. L. No. 95-504, 92 Stat. 1705. And we find no "repeal by implication" because Congress has not exhibited the requisite clear and manifest intent. E.g., Posadas v. Nat'l City Bank of N.Y., 296 U.S. 497, 503 (1936). The ADA explicitly preempted state laws but, notably, said nothing about any federal cause of action. Moreover, a saving clause found in the ADA did not disturb any other remedies provided by law. Quite simply, the two laws are not irreconcilably in conflict, nor was the ADA clearly intended as a substitute for RICO. Applying the strong presumption against implied repeals, we are constrained to conclude that RICO supplements, rather than subverts, federal regulation of air carriers.

Our decision in no way addresses whether Plaintiffs adequately alleged the elements of their civil RICO claim under Ashcroft v. Iqbal, 556 U.S. 662 (2009),

2

and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).  Thus, we have no occasion today to pass any judgment on whether fraud is pled with particularity, or whether Plaintiffs adequately pled the elements of mail and wire fraud, or indeed whether Plaintiffs sufficiently pled a RICO injury.  All we hold today is that the federal regulatory scheme governing the airline industry does not preclude a claim founded on the civil provisions of RICO.

I.

Plaintiffs' second amended complaint alleged the following basic facts. Spirit holds itself out as an "Ultra Low Cost Carrier" offering airfares at rates far lower than other providers.  These cheap fares disguise the total cost of travel because Spirit forces consumers to pay unbundled charges traditionally included in the price of an airline ticket.  Specifically, Spirit charges a Passenger Usage Fee to all consumers who buy tickets through its website or call center.  When searching for flights on Spirit's website, a consumer sees only the base fares.  Once he has selected a flight, a webpage directs him to "confirm" the flight on a page that displays both the base fare and an undifferentiated amount labeled "Taxes & Fees." For a breakdown of these charges, the consumer then must click on an additional link, "more information," which lists "Passenger Usage Fee" alongside government taxes and fees.

Plaintiffs filed a class action complaint in the United States District Court

3

for the Southern District of Florida, alleging that Spirit concealed the existence and purpose of the Passenger Usage Fee between approximately 2008 and 2011 and used the mails and wires to execute the scheme or artifice to defraud, thereby yielding civil RICO liability. Spirit moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Spirit argued that permitting Plaintiffs' RICO action would thwart Congress's intent to delegate entirely the regulation of airline ticket prices and price advertising to the Department of Transportation (DOT). Spirit also argued that Plaintiffs' RICO claims were precluded by the ADA's preemption provision. Alternatively, Spirit urged that Plaintiffs had failed to adequately plead RICO mail and wire fraud related to the Passenger Usage Fee.

The district court granted Spirit's motion to dismiss, finding that Congress intended the DOT to be the sole legal control on deceptive airfare, fees, and deceptive fee and fare advertising. Therefore, the broad federal remedial scheme precluded Plaintiffs from challenging the Passenger Usage Fee through a civil RICO action. The district court had no occasion to address whether the complaint adequately and with sufficient particularity pled the elements of wire and mail fraud and civil RICO on this claim. The district court, however, did find that Plaintiffs alleged a separate misrepresentation or scheme to defraud not related to fees, fares, or advertising that was not precluded by federal regulations: Spirit's

4

marketing materials encouraged consumers to book tickets online but failed to disclose that online purchases carried an additional fee. Still, the district court dismissed that RICO claim because Plaintiffs had failed to properly allege a predicate act and injury. The court granted leave to file a third amended complaint setting forth a RICO claim related to the buy-online marketing. Plaintiffs, however, filed notice of their intention not to amend the complaint, and the district court entered final judgment. Plaintiffs timely appealed, raising a single issue: whether the district court erred in determining that a civil RICO action related to the Passenger Usage Fee was precluded by the federal scheme of airline regulation.

II.

We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 705 (11th Cir. 2014). We accept, as we must at this stage, the allegations in the complaint as true and construe them in the light most favorable to Plaintiffs. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

5

The Federal Aviation Act (FAA), Pub. L. No. 85-726, 72 Stat. 731 (1958), gives the DOT the power to "investigate and decide whether an air carrier . . . has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation."  49 U.S.C. § 41712(a).[1]  The DOT may order an air carrier to stop an unfair or deceptive practice or method and may impose civil penalties of no more than $25,000 for each day of these violations.  Id. § 41712(a); id. § 46301(a)(1) ("A person is liable to the United States Government for a civil penalty of not more than $25,000 . . . for violating . . . [§ 41712] . . . ."); id. § 46301(a)(2) ("A separate violation occurs under this subsection for each day the violation . . . continues . . . .").  The DOT's "full-fare advertising rule" deems unfair and deceptive any price advertising for air transportation that does not state the "entire price to be paid by the customer."  14 C.F.R. § 399.84(a) ("Although charges included within the single total price listed (e.g., government taxes) may be stated separately or through links or 'pop ups' on

---

[1] When enacted in 1958, the FAA conveyed this authority on the Civil Aeronautics Board (CAB), but the power passed to the DOT in 1985.  In full, § 41712(a) provides:

> In general.-- On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation.  If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.

websites that display the total price, such charges may not be false or misleading, may not be displayed prominently, may not be presented in the same or larger size as the total price, and must provide cost information on a per passenger basis that accurately reflects the cost of the item covered by the charge.").

When first enacted, the FAA provided that it did not "in any way abridge or alter the remedies now existing at common law or by statute." Pub. L. No. 85-726, § 1106, 72 Stat. at 798. Instead, Congress wrote, its provisions "are in addition to such remedies." Id. The 1978 ADA, however, contained a preemption provision expressly prohibiting "a State" from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). At the same time, the ADA included a saving clause to the effect that "[a] remedy under this part is in addition to any other remedies provided by law." Id. § 40120(c).

Meanwhile, in 1970 Congress enacted RICO, which created both criminal and civil liability for "racketeering activity" connected to interstate commerce. 18 U.S.C. § 1962. Section 1961(1) of RICO defines racketeering activity to include acts indictable as mail fraud, id. § 1341, and wire fraud, id. § 1343. RICO provides criminal penalties, but also allows "[a]ny person injured in his business or property" by a RICO violation to sue to recover treble damages, as well as fees and

7

costs.  Id. § 1964(c).  To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts.  Reves v. Ernst & Young, 507 U.S. 170, 172, 185 (1993); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 & n.14 (1985).  In addition, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  Sedima, 473 U.S. at 496.

Though the FAA and ADA do not provide a private right of action, RICO created a separate statutory action that allows plaintiffs to recover for injuries caused by the operation of an enterprise through a pattern of racketeering activity. In this case, Plaintiffs do not attempt to enforce FAA restrictions on unfair and deceptive practices or methods of competition, nor do they seek relief on the ground that Spirit violated the DOT's full-fare advertising rule.  Instead, their claim depends on RICO's independent federal prohibition on mail and wire fraud.

This is not a preemption case.  Federal preemption of state laws is a creature of the Supremacy Clause. See U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ."); Altria Grp. v. Good, 555 U.S. 70, 76 (2008) ("[W]e have long recognized that state laws that conflict with federal law are 'without effect.'" (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981))).

8

But federal statutes do not preempt other federal statutes. See, e.g., Baker v. IBP, Inc., 357 F.3d 685, 688 (7th Cir. 2004). Rather, this case involves the interplay between two statutory schemes created by Congress for different reasons and at different times. Nevertheless, Spirit claims to find a profound conflict between federal air regulation and the application of civil RICO. If Spirit is right, "[t]he term for this dynamic is repeal -- whether and how a later act of Congress modifies an earlier one." Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs, 619 F.3d 1289, 1296 (11th Cir. 2010) (emphasis added); id. ("Another name for it is exemption.").

The essential problem here is that Spirit does not -- and cannot -- argue that Congress has expressly repealed the application of the civil provisions of RICO by codifying the ADA. See id. Thus, Plaintiffs' RICO claims would be precluded only if the ADA implicitly repealed RICO's authorization of civil claims related to airline prices and fees. But "[t]he cardinal rule is that repeals by implication are not favored." Posadas, 296 U.S. at 503; accord TVA v. Hill, 437 U.S. 153, 189 (1978); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1251 (11th Cir. 2005) (per curiam); see Samuels v. District of Columbia, 770 F.2d 184, 194 n.7 (D.C. Cir. 1985) ("[R]epeals [by implication] are strongly disfavored on the ground that Congress is normally expected to be aware of its previous enactments and to provide a clear statement of repeal if it intends to extinguish an extant

9

remedy."). We apply a strong presumption against finding repeals by implication precisely because they involve so much speculation about congressional intent. Miccosukee Tribe, 619 F.3d at 1299. Thus, when Congress passes two statutes that may touch on the same subject, we give effect to both unless doing so would be impossible. J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 143-44 (2001); Morton v. Mancari, 417 U.S. 535, 551 (1974); Posadas, 296 U.S. at 503. We must "assiduously attempt" to construe two statutes in harmony before concluding that one impliedly repeals the other. Miccosukee Tribe, 619 F.3d at 1299 (quoting Tug Allie-B, Inc. v. United States, 273 F.3d 936, 952 (11th Cir. 2001)).

The Supreme Court has instructed that repeals by implication may only be found when Congress's intent to repeal is "clear and manifest." Rodriguez v. United States, 480 U.S. 522, 524 (1987) (quoting United States v. Borden Co., 308 U.S. 188, 198 (1939)). We may infer clear and manifest intent from the existence of an "irreconcilable conflict." Id. (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 468 (1982)); see Wood v. United States, 41 U.S. 342, 363 (1842) ("[T]here must be a positive repugnancy between the provisions of the new law, and those of the old; and even then, the old law is repealed by implication, only pro tanto, to the extent of the repugnancy."). We also may find an implied repeal when "the later act covers the whole subject of the earlier one and is clearly intended as a

10

substitute." Posadas, 296 U.S. at 503; accord Town of Red Rock v. Henry, 106 U.S. 596, 601 (1883). Still, it is not enough to establish that a later law covers some or even all of the cases provided for by an earlier law, because the subsequent statute "may be merely affirmative, or cumulative or auxiliary." Wood, 41 U.S. at 362-63.

As a matter of chronological necessity, the 1958 FAA could not have repealed any part of the yet-to-be-born 1970 RICO statute. Regardless of whether the FAA established a "comprehensive federal regulatory scheme governing air carriers," Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1250 (6th Cir. 1996), Spirit cannot claim implied repeal through the FAA because Congress enacted RICO on top of its framework.

Nor did Congress give any indication that the 1978 ADA repealed the portion of RICO authorizing civil claims predicated on mail and wire fraud. In the first place, there is no irreconcilable conflict between the two laws. The ADA substantially deregulated the airline industry in an effort to place "maximum reliance on competitive market forces." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992). To ensure its work was not undone by state regulation, the ADA amended the FAA to expressly preempt state laws relating to an air carrier's price, route, or service. 49 U.S.C. § 41713. The statutory text and legislative history indicate that the preemption provision was included to delineate areas of

11

federal and state responsibility in a way that would avoid conflicting demands on air carriers.  See House Report No. 95-1211, 1978 U.S.C.C.A.N. at 3752.  The ADA said nothing about federal laws in this area, which strongly signals that Congress meant not to disturb them.  Cf., e.g., Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 517 (1992) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."); Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1253 (11th Cir. 2003) ("[W]here Congress has chosen to explicitly address the issue of pre-emption, . . . it generally is inappropriate to look beyond that provision to imply pre-emption from the statute's substantive dictates.").

Congress even more clearly indicated that the ADA did not interrupt federal RICO actions by including a saving clause, which expressly stated that remedies provided by federal air commerce and safety regulations are in addition to other remedies provided by law.  49 U.S.C. § 40120(c); cf. Geier v. Am. Honda Motor Co., 529 U.S. 861, 868 (2000) ("The language of the pre-emption provision permits a narrow reading that excludes common-law actions.  Given the presence of the saving clause, we conclude that the pre-emption clause must be so read.").  The legislative history indicates no "unambiguous congressional perception" that the ADA was designed to exempt a civil RICO claim predicated on acts of mail and wire fraud somehow involving airline fees, prices, or advertising.  See Brown

12

v. Gen. Servs. Admin., 425 U.S. 820, 828-29 (1976).  Nor does the legislative history signal that Congress gave the slightest consideration to the partial repeal of RICO, let alone to suggest "that Congress consciously abandoned its (prior) policy."  Radzanower v. Touche Ross & Co., 426 U.S. 148, 157-58 (1976) (quoting Morton, 417 U.S. at 551).  Simply put, nothing in the statute nor the legislative history indicates an intent on the part of Congress to create an exemption from federal RICO when it divided federal and state responsibility for airline regulation.

Moreover, we recognize the two federal remedial schemes as "capable of co-existence" because they feature different requirements and offer different protections.  ICC v. S. Ry. Co., 543 F.2d 534, 539 (5th Cir. 1976);[2] see J.E.M. Ag Supply, 534 U.S. at 144.  DOT's administrative process provides for a lower level of culpability but less severe sanctions.  DOT need not find deceptive intent, fraud, or injury before levying penalties or ordering a carrier to alter an unfair or deceptive practice or an unfair method of competition.  49 U.S.C. § 41712; Am. Airlines v. N. Am. Airlines, 351 U.S. 79, 85-86 (1956).  But these penalties do not compensate consumers for their injuries; instead, fines are paid to the United States Treasury and are capped at comparatively modest levels.  49 U.S.C. § 46301(a).

In sharp contrast, in order to sustain a private civil RICO action, the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

plaintiffs must plead far more than the existence of an unfair or deceptive practice or an unfair method of competition. RICO requires proof that the defendant operated or managed an enterprise through a pattern of racketeering activity that injured the plaintiff.  For civil RICO claims predicated on acts of mail and wire fraud, the plaintiff must establish that the defendant devised or intended to devise a scheme or artifice to defraud, and that the defendant used the mail or interstate wire, radio, or television communication for the purpose of executing that scheme or artifice.  See 18 U.S.C. §§ 1341, 1343, 1961(1); Durland v. United States, 161 U.S. 306, 315 (1896) (describing elements of mail fraud).  Unlike with the DOT regulations, then, mail and wire fraud require "that a defendant actually intended to create a scheme to defraud."  United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc).  Mail and wire fraud are specific intent crimes, requiring that a defendant acted with bad purpose either to disobey or disregard the law.  United States v. Ettinger, 344 F.3d 1149, 1160 (11th Cir. 2003); see United States v. Maxwell, 579 F.3d 1282, 1302 (11th Cir. 2009) ("[T]he specific intent required under the mail and wire fraud statutes is the intent to defraud . . . .").  If defendants are culpable under this more demanding standard, civil RICO's treble damages provision compensates plaintiffs, and at a far greater cost to defendants than DOT's limited penalties.  See 18 U.S.C. § 1964(c).  There is no inconsistency in a federal system that creates tiered levels of liability by providing stiffer sanctions

14

when an air carrier is involved in criminal <u>fraud</u>, not merely engaged in an unfair or deceptive act.  <u>Cf.</u> <u>United States v. Boffa</u>, 688 F.2d 919, 933 (3d Cir. 1982) ("That the mail fraud statute makes criminal activity that may also be proscribed by the NLRA does not render the former statute 'positively repugnant' to the latter.").

Similarly, the ADA does not cover the whole subject of, and is not clearly intended as a substitute for, RICO.  The different remedial means we've described serve different legislative purposes.  DOT's regulation of unfair and deceptive practices seek to promote fair competition among carriers, while civil RICO targets a broad category of criminally fraudulent acts not restricted to air carriers, pricing, or advertising.  <u>Cf.</u> <u>Radzanower</u>, 426 U.S. at 157 (finding no implied repeal when "[t]he 1934 Act was enacted primarily to halt securities fraud, not to regulate banks").  The ADA was a wholly different animal from RICO, which "was an aggressive initiative to supplement old remedies and develop new methods for fighting crime."  <u>Sedima</u>, 473 U.S. at 498.  "When we consider the different objects which it is reasonably clear the legislature had in view in the passage of these two acts, it is a fair construction to hold that it was not the intention of the legislature, by the passage of the later act, to repeal the older act, either totally or partially."  <u>Red Rock</u>, 106 U.S. at 603.

While Spirit may prefer a narrow interpretation of RICO, Congress

15

expressly admonished that the statute is to "be liberally construed to effectuate its remedial purposes." Sedima, 473 U.S. at 498 (quoting RICO, Pub. L. No. 91-452, § 904(a), 84 Stat. at 947). When confronted with "extraordinary" uses of civil RICO that "appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud," the Supreme Court has refused to engage in "statutory amendment": "correction must lie with Congress." Id. at 499-500. We can divine no clear and manifest congressional intent for the ADA to have made such an alteration to RICO.

Spirit relies on Ayres v. General Motors Corp., 234 F.3d 514 (11th Cir. 2000), but that precedent offers little guidance in this case. The Ayres plaintiffs claimed that the defendants had breached a duty to disclose alleged safety defects as required by the National Traffic and Motor Vehicle Safety Act ("Safety Act"), and that this breach necessarily gave rise to the predicate acts of mail and wire fraud under Georgia's RICO statute. Id. at 516-17. We found "it clear that Congress did not intend to equate a violation of the Safety Act's notification requirements in and of itself with the felony of mail or wire fraud." Id. at 522. In other words, plaintiffs could not use the Safety Act's regulatory scheme, which featured "its own extensive array of administrative remedies for a violation of its notification obligations," to establish a RICO predicate act of mail or wire fraud where none could otherwise be shown. Id. But under Ayres a plaintiff still "can

16

show a scheme to defraud if he proves that some type of deceptive conduct occurred." Id. at 521. He simply cannot use the Safety Act to establish that the defendant pursued a fraudulent scheme and used the mails or wires to execute that scheme, all in violation of RICO.

In this case, however, the Plaintiffs have not alleged that the FAA, the ADA, or DOT regulations expand the scope of RICO by spawning new predicate acts. Plaintiffs do not argue that a previous DOT ruling on unfair or deceptive advertising proves the existence of a predicate act of mail or wire fraud. Simply put, the district court was concerned that the federal statutes overlap. But that is how Congress wrote them. Sometimes a defendant's actions may qualify both as unfair and deceptive advertising under the FAA and as mail or wire fraud under federal criminal statutes. So long as Plaintiffs do not argue that violation of the first establishes the second, our precedent does not restrict their RICO action.

The only other federal court to confront a RICO action like Plaintiffs' found no preclusion from the ADA. See All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc., 282 F. Supp. 2d 1161 (C.D. Cal. 2003). In All World, a travel agency sued an airline in a dispute over cancellation fees charged for flights in the months following September 11, 2001. The court recognized that the plaintiffs could have complained to the DOT, but held that "Congress did not intend to require the type of conduct alleged in the Complaint" -- including mail and wire

17

fraud -- "to be submitted to the DOT." Id. at 1166. Just as in this case, the airline insisted that the comprehensiveness of the ADA precluded the travel agency from challenging airline fees "in the guise of a RICO claim." Id. at 1172. The court was unmoved because the RICO claims were based on mail and wire fraud instead of ADA violations, because the ADA was not intended to completely subsume the field of airline liability, and because no provision in the ADA conflicted with RICO. Id. at 1172-74. For the reasons we've explained, we agree with the All World court that civil RICO claims predicated on mail and wire fraud are not precluded by the ADA simply because they involve fraud arising out of pricing, fees, and advertising in the airline industry.

We vacate the dismissal of Plaintiffs' claim tied to Spirit's Personal Usage Fee because Congress did not expressly or impliedly repeal RICO's authorization of civil suits based on acts of mail and wire fraud. Again, we pass no judgment on whether Plaintiffs have adequately pled a RICO claim, and remand to allow the district court to make that determination.

**VACATED AND REMANDED.**