**Bryan RAY, and others, Plaintiffs**

v.

**SPIRIT AIRLINES, INC., Defendant**

**Civil Action No. 12–61528–Civ–Scola**

United States District Court,
S.D. Florida.

Signed July 24, 2015

Filed July 27, 2015

---

Joel Douglas Eaton, John Gravante, III, Katherine Warthen Ezell, Robert C. Josefsberg, Podhurst Orseck Josefsberg, et al., Miami, FL, for Plaintiffs.

Daniel T. Graham, Leslie A. Gutierrez, Clark Hill, PLC, Chicago, IL, Jeffrey M. Harris, Paul D. Clement, Bancroft PLLC, Washington, DC, Scott Michael Dimond, Lorenz Michel Pruss, Dimond Kaplan & Rothstein PA, Coconut Grove, FL, for Defendant.

### Order Denying Motion for Relief

Robert N. Scola, Jr., United States District Judge

THIS MATTER is before the Court on Plaintiffs' Motion for Relief from Judgment (ECF No. 91.) Defendant Spirit Airlines, Inc. ("Spirit") filed a Response in Opposition (ECF No. 93) and Plaintiffs replied (ECF No. 94.) The Court held oral argument on the Motion on July 15, 2015. After careful consideration of the applicable law, the parties' briefing, and arguments made during the hearing, and

for the reasons explained below, the Court denies the Motion.

### 1. Factual and Procedural Background

After several years of motion practice, appeal, and amended complaints, this Racketeer Influenced and Corrupt Organizations Act ("RICO") case has not yet proceeded beyond the motion to dismiss stage. Most recently, the Court granted Spirit's Motion to Dismiss the Second Amended Complaint. (ECF No. 85.) The Court allowed Plaintiffs leave to amend and, subsequently, Plaintiffs asked for an extension of time to file their Third Amended Complaint. (ECF No. 86.) The Court granted that request and required Plaintiffs to file their Third Proposed Amended Complaint by June 29, 2015, warning them that the case would be closed if they failed to file by that date.

Plaintiffs did not file by June 29 and, on June 30, the Court closed the case and entered judgment. Within hours, Plaintiffs filed a Motion for Relief from Judgment and filed their Third Amended Complaint, the fourth complaint filed in this action. (ECF Nos. 1, 13, 35, and 92.) In the Motion to Set Aside Judgment, Plaintiffs explained that they had miscalendared the date and had inadvertently missed the deadline. (*See* Mot. Relief, ECF No. 91.) Spirit responded to the Motion, arguing that the mistake was not excusable neglect and that even if it was, allowing the Third Amended Complaint would be futile. (Resp. ECF No. 93.) The Court accepted that the miscalendaring was excusable neglect but asked the parties to address the futility of proceeding on the Third Amended Complaint during the hearing held on July 15, 2015.

The factual background of this case is included in detail in the Court's previous orders. (*See, e.g.,* Order on Motion to Dismiss, ECF No. 85.) Essentially, Plaintiffs allege that Spirit, an "ultra-low cost" commercial passenger airline carrier advertises lower fares but adds additional charges and fees to generate "non-ticket revenue." One such fee—the "Passenger Usage Fee" ("PUF")—is charged to consumers who purchase tickets on Spirit's website or through Spirit's call center. Plaintiffs claim that this PUF is a supplementary fare deceptively hidden amid official taxes and fees. Plaintiffs allege that this scheme allows Spirit to advertise competitive low base fares, but recover the revenue under the pretense of a service fee. Plaintiffs claim that Spirit's action constitutes a RICO violation based on 18 U.S.C. § 1962(c).

### 2. Legal Standard

 Plaintiffs' Motion for Relief from Judgment was filed under Federal Rule of Civil Procedure 60(b)(1). (Mot. ¶ 5, ECF No. 91.) The Court already agreed to consider the complaint timely filed for purposes of excusable neglect, but "[t]o obtain relief under 60(b), a party must demonstrate a defense that probably would have been successful, in addition to showing excusable neglect." *Solaroll Shade & Shutter Corp., Inc. v. Bio–Energy Sys., Inc.,* 803 F.2d 1130, 1133 (11th Cir.1986). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir.1999). In other words, leave to amend should be denied when the complaint as amended "would necessarily fail." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 470 F.3d 1036, 1040 (11th Cir.2006) (citation omitted).

Spirit argues that the Third Amended Complaint is futile because it does not state a claim for which the Court may

grant relief. In order to address whether the Third Amended Complaint is futile, the Court must consider whether the Complaint would be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therefore, the Court must accept all of the complaint's well-pled factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.2008). The allegations must comply with Federal Rule of Civil Procedure 8(a)(2) which requires "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (brackets, internal citation, and internal quotation marks omitted). However, the Court need not accept an inference when there is "an obvious alternative explanation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2006). When "[d]etermining whether a complaint states a plausible claim for relief" a "reviewing court" should "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint ... has not shown that the pleader is entitled to relief." *Id.* (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *accord Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010)

█ Plaintiffs' single RICO claim is based on wire fraud and mail fraud, criminalized in 18 U.S.C. §§ 1341, 1343. (3d Am. Compl. ¶¶ 1–15, 75, 85; ECF No. 92.) Because Plaintiffs' claim arises from an alleged pattern of racketeering consisting of fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal*, but also with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Rule 9(b) requires that "[i]n alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)).

█ Under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). The plaintiff must allege facts with respect to each defendant's participation in the fraud. *Am. Dental Ass'n*, 605 F.3d at 1291; *Brooks*, 116 F.3d at 1381.

### 3. Analysis

During the hearing on Plaintiffs' Motion, Plaintiffs argued that their allegations are "virtually identical" to those in *Kemp v. American Telephone & Telegraph Co.*, 393 F.3d 1354 (11th Cir.2004). In *Kemp*, the Eleventh Circuit found that the "nondisclosure of material information, even in the absence of any patently false statements, can also constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose." *Kemp*, 393 F.3d at 1359–60. In other words, a defendant may commit mail and wire fraud by omission. Plaintiffs argue that the fraud at the heart of their RICO claim was Spirit's failure to adequately inform customers about the PUF. The Court finds, for the reasons articulated below that: (1) *Kemp* is distinguishable; (2) that Plaintiffs' Third

Amended Complaint fails to sufficiently allege a RICO violation because Plaintiffs fail to allege an enterprise; and (3) even if Plaintiffs sufficiently allege an enterprise, the Third Amended Complaint still fails to include enough factual allegations to meet the Rule 9(b) standard to sufficiently allege the predicate offenses.

A. **The factual allegations in _Kemp_ are distinguishable from this case, and thus the Eleventh Circuit's findings that the _Kemp_ Plaintiffs' allegations sufficiently state a RICO claim, does not apply to this action.**

■ Plaintiffs argue that their theory of fraud rests on the hidden and concealed nature of the PUF. The PUF was included in a section of Spirit's website titled "Taxes & Fees." (_See_ 3d Am. Compl. ¶ 49, ECF No. 92.) Plaintiffs contend that the use of

the term "taxes" deceives consumers into assuming that the PUF is "an official government tax." (_Id._ at ¶ 55.) That is, Spirit, Plaintiffs allege, hide the PUF as a tax in a section that consumers assume is reserved for mandated government-imposed taxes. Specifically, Plaintiffs allege that "[b]y means of omissions and representations, Spirit misleads consumers to believe that the PUF is an official government tax or sanctioned fee." (_Id._ at ¶ 11.)

Plaintiffs claim that the website has gone through several iterations and thus they cannot be sure that the examples used are precisely what the individual Plaintiffs had accessed. However, Plaintiffs provide the following figures in their Third Amended Complaint as "representative examples." (_Id._ at ¶¶ 48–51.) The first figure includes the total transaction cost, after a consumer has selected a flight, broken into two sections:

Purchase Price

| | | |
|---|---|---|
| FLIGHT | | ʼ129ʼ |
| TAXES & FEES | | 19 |
| | TOTAL | ʼ148ʼ |

Clicking on the title of the section prompts a drop-down list, which includes a breakdown of the "Taxes and Fees":

Purchase Price

| | | |
|---|---|---|
| FLIGHT | | $129 |
| TAXES & FEES | | $19 |
| | | $4.50 |
| | | $5.64 |
| | | $3.40 |
| | | $2.50 |
| | TOTAL | $148 |

At one time, there were direct links to what each fee represented, (_see_ ECF No. 39–1), but at other times, the detailed description may have been "hidden behind

multiple layers of webpage selections." (3d Am. Compl. ¶ 53, ECF No. 91.) The Court finds the deception allegations based on the descriptions in the Third Amended Complaint dubious because (1) there is no use of the word "government" or "official," (2) the fees and taxes are differentiated—not grouped together under a heading that only says "taxes"—and (3) consumers are made aware of the fee *before* they purchase the ticket and incur the charge.

At oral argument, Plaintiffs insisted that their deception theory is identical to the theory presented in *Kemp.* In *Kemp,* the defendant, AT & T, added gambling debts to customers' bills after it had contracted to bill and collect fees for a telephone-gambling-game company. AT & T included the gambling debts in customers' bills under the heading "direct dialed calls." *Kemp,* 393 F.3d at 1360. The gambling debts—labeled as calls—were included on Kemp's "phone bill and were interspersed among charges for regular long distance calls." *Id.* Thus the charges were not identifiable as gambling debts on the plaintiff's bills.

That scheme is entirely different from the Spirit PUF, which is identifiable on the Spirit website. First, Spirit does not call or label the PUF anything but a "Passenger Usage Fee." Second, the PUF—a carrier imposed fee—is included in a section of the website titled "Taxes & Fees," which notably does **not** include the words "government" or "official." Unlike in *Kemp,* where gambling debts were labeled long distance calls, Plaintiffs do not allege that Spirit called the PUF a "government tax" (when in reality, it was a carrier-imposed fee.) In other words, in *Kemp* the defendant said X (direct dialed call) and meant Y (gambling debt), while here, Spirit said X (passenger usage fee) and meant X (passenger usage fee).

Moreover, the PUF does not rise to the level of deception in *Kemp* because the PUF is a fee that can be collected legally. In *Kemp* the hidden charges were for gambling debts, which "could not be collected lawfully." *Kemp,* 393 F.3d at 1360. Thus, AT & T customers could not lose their phone service for failing to pay those gambling debts. But because AT & T labeled the debts as calls, individuals were deceived into paying the debts as part of their phone bill in order to maintain their services.

Further, in *Kemp,* the Eleventh Circuit found that AT & T's material omissions regarding the true nature of the charges were an "essential part of Kemp's decision to pay the[ ] gambling debts" and that Kemp relied on the omissions when he decided to pay the bill. *Id.* at 1361. But Plaintiffs here do not allege that they relied on the purported omission that a PUF would accrue. During the hearing Plaintiffs abandoned their allegations related to advertising, and, in so doing, destroyed the necessary reliance element discussed in *Kemp.* *See also, e.g., Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co.,* 165 F.Supp.2d 1345, 1351 (S.D.Fla.2001) ("[I]n order to establish proximate causation in a civil RICO action predicated on fraud, the purported victim must make the same showing of reasonable reliance that is required for establishing injury from common law fraud.").

### B. Plaintiffs' Conspiracy Claim fails because Plaintiffs do not sufficiently allege an enterprise in accordance with 18 U.S.C. § 1962(c).

During the hearing on their motion, Plaintiffs argued that the Court mischaracterized their allegations. Plaintiffs emphasized that their claim was brought under 18 U.S.C. § 1962 subsection (c) not subsection (d). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the

activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

■ Plaintiffs' Third Amended Complaint fails to state a RICO claim because Plaintiffs fail to allege the existence of an "enterprise." A civil RICO claim requires a demonstration of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property." *Ace Pro Sound and Recording, LLC v. Albertson,* 512 F.Supp.2d 1259, 1266 (S.D.Fla.2007) (Cooke, J.) (citing *Langford v. Rite Aid of Ala., Inc.,* 231 F.3d 1308, 1311 (11th Cir.2000)); *accord Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,* 202 F.Supp.2d 1339 (S.D.Fla.2002) (Gold, J.).

**(1) Structure**

The Supreme Court has held that the statutory definition of "enterprise" encompasses both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Therefore, "[t]here is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact." *Id.* This broad language led to division amongst the circuits over the criteria of an association in fact enterprise.

While other circuits required plaintiffs to demonstrate that an enterprise had an "ascertainable structure" the Eleventh Circuit required only a showing of "an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *United States v. Goldin Indus., Inc.* 219 F.3d 1271, 1275 (11th Cir.2000).

The Supreme Court recently sought to clarify the RICO requirements and resolve the circuit splits. In *Boyle v. United States,* 556 U.S. 938, 948, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), the Court determined that a RICO enterprise does not need to have a "hierarchical structure or 'chain-of-command'" or "a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." But the Court determined that, at a minimum, an enterprise must possess three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." *Id.* at 946, 129 S.Ct. 2237.

Relying on the expansive language of *Turkette* and *Boyle,* as well as the liberal construction of the statute,[1] opportunistic plaintiffs have sought to impose civil RICO liability on corporations engaged in standard commercial dealings. These plaintiffs attempt to satisfy the "enterprise" requirement of the statute by demonstrating that a defendant corporation engaged in activities with legally separate entities, such as law firms, consultants, agents, and employees. Incidentally, such allegations

---

1. The RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." Pub.L. 91–452, Title IX, § 901(a), Oct. 15, 1970, 84 Stat. 941, note following 18 U.S.C. § 1961; *see also, e.g., National Organization for Women, Inc. v.* *Scheidler,* 510 U.S. 249, 257, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("RICO broadly defines 'enterprise.'"); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("RICO is to be read broadly.").

can satisfy the structural requirements of *Boyle:* most business relationships have "purpose" and "longevity." Yet the goal of RICO is to combat organized crime, not to police routine commercial dealings. *See* Pub.L. No. 91–452, 84 Stat. 922 (1970). In concert with the "structure" requirements, a separate "distinctiveness" requirement provides the necessary buffer against overly broad RICO claims.

### (2) Distinctiveness

■ In addition to demonstrating that an enterprise possesses the structural features described above, plaintiffs must prove that each party to the enterprise is separate and distinct from the other. *See Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."). Each party must be separate and distinct from the enterprise because RICO liability "depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs." *Id.* at 163, 121 S.Ct. 2087 (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)).

*Boyle* left the distinctiveness requirement undisturbed: "As we explained in *Turkette,* the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'" 556 U.S. at 947, 129 S.Ct. 2237. The Supreme Court provided a hypothetical example in which "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion." The Court noted that "[p]roof of these patterns would not be enough to show that the individuals were

members of an enterprise." *Id.* at 947 n. 4, 129 S.Ct. 2237 .

Accordingly, legally separate entities—such as corporations or persons—do not necessarily constitute a RICO enterprise by virtue of their interrelationships, even if the parties together engage in fraudulent conduct. *See Boyle,* 556 U.S. at 947, 129 S.Ct. 2237; *accord Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.,* 502 F.Supp.2d 1237, 1253 (S.D.Fla.2007) (Seitz, J.) *aff'd sub nom. Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.,* 582 F.3d 1227 (11th Cir.2009) ("[M]ere corporate separateness is not necessarily sufficient to establish a distinct RICO person and enterprise."). "The key to distinctness depends less on whether the corporations are separate in the formal legal sense and more on whether the corporations are free to act independently of each other and to advance their own separate interests." *Boca Raton Cmty. Hosp.,* 502 F.Supp.2d at 1253. In certain circumstances, distinct corporate entities can be viewed as indistinct for the purpose of the RICO statute. *Id.*

One such circumstance is where an alleged "enterprise" is comprised only of subsidiaries, agents, or employees of the corporation, acting in concert for routine business affairs. Ample case law in this circuit, left undisturbed by *Boyle,* supports the narrower view that such entities should be treated as indistinct for the purposes of a civil RICO claim. *See, e.g., Kelly v. Palmer, Reifler, & Assocs., P.A.,* 681 F.Supp.2d 1356, 1378 (S.D.Fla.2010) (Moreno, J.) (finding that a law firm acting as an agent for its retail clients was not a separate and independent entity as required by RICO); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.,* 336 F.Supp.2d 1239, 1261 (S.D.Fla.2004) (Gold, J.) *aff'd,* 470 F.3d 1036 (11th Cir.2006) (finding that plaintiff failed to allege a

RICO enterprise where the enterprise was comprised only of the company's employees, counsel, consultants, and agents, who were carrying out routine corporate functions); *Burstein v. First Penn–Pac. Life Ins. Co.*, No. 01–985–CIV, 2002 WL 34186960, at *6 (S.D.Fla. Feb. 12, 2002) (Graham, J.) (noting that "[u]nder the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members").

### (3) The Spirit "RICO Enterprise"

■ Plaintiffs allege the existence of a RICO enterprise, made up of Defendant Spirit Airlines; Spirit officers and executives; Accenture/Navitaire; Colt Cooper, a technology and platform consultant; and MSP Communications and its president, Misty Pinson. (3d Am. Compl., ¶¶ 8191, ECF No. 92.)

Through the course of their alleged conduct, these parties do not constitute a RICO enterprise. Plaintiffs allege, for example, that "Navitaire, a wholly owned subsidiary of Accenture, LLC, has assisted the RICO Enterprise by providing a comprehensive airline passenger sales and management solutions platform *that has been specifically customized for misrepresentation* and assessment of the PUF." (3d Am. Compl. ¶ 82, ECF No. 92) (emphasis added). Plaintiffs do not specify *who* "specifically customized the platform for misrepresentation." From these allegations, the Court can infer only that Navitaire sold Spirit a "management solutions platform" at some point in time. Accordingly, Plaintiffs do not demonstrate the requisite structural detail or distinctiveness of a RICO enterprise *vis-à-vis* Navitiare. *See Boyle*, 556 U.S. at 946, 129 S.Ct. 2237 (an association in fact must have a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the en-

terprise's purpose). This business relationship—perhaps only a one-time sale—does not have the purpose, longevity, or distinctiveness of a RICO enterprise.

Plaintiffs allege that Colt Cooper, an airline reservation software consultant who has "worked extensively with Spirit to implement its website and reservation system"; Objectart Solutions, LLC and its owner Kenneth Ramirez, who "have consulted with Spirit since 2006 in the area of software, architecture, development, quality assurance and technology management"; and MSP Communications, Inc, a Florida-based advertising and marketing company, were part of the enterprise as well. (3d Am. Compl., ¶ 82, ECF No. 92.) However, these ongoing consultant relationships are more akin to employer-employee or agency relationships, which do not possess the distinctiveness of a RICO enterprise. *See, e.g, Burstein*, 2002 WL 34186960, at *6 ("Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members."). Notwithstanding the "legal separateness" of the entities here and the alleged longevity of the relationships, Plaintiffs do not show that the parties were "free to act independently of each other and to advance their own separate interests." *Boca Raton Cmty. Hosp.*, 502 F.Supp.2d at 1253.

The corporate world is not always vertically integrated: every day, companies seek outside assistance for certain business ventures. They outsource platform development, hire outside marketing consultants, and contract with cleaning companies to maintain their premises. But these common business relationships do not, in and of themselves, constitute racketeering "enterprises" for the purpose of RICO liability under 18 U.S.C. § 1962(c).

The statute cannot be so overly broad that absurd consequences result—i.e., that every company with agents and employees is *per se* a member of a distinct RICO "enterprise." *See* Pub.L. No. 91–452, 84 Stat. 922 (1970) (noting that RICO's purpose is "to seek the eradication of organized crime").

The Seventh Circuit has also addressed this issue and found no support for "applying RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through agents, as virtually every manufacturer does." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir.1997). In *Fitzgerald*, the plaintiff alleged that Chrysler was the RICO "person" and its subsidiaries and dealers constituted the "enterprise." The Seventh Circuit affirmed the district court's dismissal of the RICO claim, holding that Chrysler's dealers and subsidiaries were too akin to employees—and thus were not distinct—to hold Chrysler liable under RICO. *Fitzgerald*, 116 F.3d at 228.

Likewise, Plaintiffs do not plausibly allege that Spirit is part of a separate RICO enterprise merely by showing that it hires outside developers, marketers, and software designers, as most large corporations do. *See Fla. Evergreen*, 336 F.Supp.2d at 1261 (holding that the plaintiff failed to allege RICO claims involving a distinct enterprise where alleged enterprise consisted of corporation, employees, outside counsel, and agents and consultants). Even accepting Plaintiffs' allegations that Spirit used its marketing platforms for "deceptive, abusive and fraudulent" conduct, it does not necessarily follow that the outside developers and consultants who worked on the platforms comprised a racketeering "enterprise." *See Boyle*, 556 U.S. at 955, 129 S.Ct. 2237 (noting that "proof of an enterprise's separate existence will [often] require different evidence from that used to establish the pattern of predi-

cate acts."); *see also Fitzgerald*, 116 F.3d at 228) ("RICO, however, is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. 'Enterprise' connotes more."). The structure and distinctiveness requirements prevent such an assumption and set boundaries for RICO enterprise allegations. Plaintiffs have failed to overcome those hurdles in demonstrating a separate and distinct vehicle for racketeering activity.

**C. Even if Plaintiffs sufficiently allege an enterprise, they failed to correct the factual deficiencies noted in the Court's prior order.**

 In the Third Amended Complaint, Plaintiffs allege mail and wire fraud as the predicate offenses of the RICO scheme. The elements of these offenses are essentially identical. *See United States v. Ward*, 486 F.3d 1212, 1221–22 (11th Cir. 2007) (noting that mail and wire fraud both require (1) intentional participation in a scheme or artifice to defraud another of money or property; and (2) use or "cause to be used" the mails or wires for the purpose of executing the scheme or artifice). But like the Second Amended Complaint (ECF No. 85), the Third Amended Complaint fails to include the requisite factual allegations to state fraud with particularity.

At oral argument, Plaintiffs stated that the Court misconstrued their fraud allegations. Plaintiffs argued that they do not allege that Spirit's advertisements were fraudulent, but that the fraud for which they seek compensation is based on the omission of an identifiable PUF notification on the website. Notwithstanding this theory, Plaintiffs allegations are insufficient to state a claim for "a distinct pattern of racketeering activity to defraud by omissions and misrepresentations" to constitute wire and mail fraud. (3d Am. Compl. ¶ 9, ECF No. 91.) Plaintiffs Dior-

io, Gibson, Sily, Rubin, Tilton, and Badaczweski fail to include the steps they took to purchase the tickets. For example, did the Taxes & Fees section have a drop-down menu as the Complaint alleges in Paragraph 47, or was the website completely lacking any indication that the PUF existed? (*Id* at ¶¶ 21–26.) Some Plaintiffs, like Tilton or Badaczweki, do not even allege their injury, i.e., how much they were charged in PUFs.

The Third Amended Complaint includes general allegations of how "Class members" entered Spirit's website and selected flight segments, but there are no details regarding whether the website was identical for each Plaintiff. They also fail to specifically allege what on the website confused each Plaintiff. Plaintiffs indicate that the booking process described in the Third Amended Complaint is "but one version that Spirit employed in its online sales platform during the Class Period to dupe customers into paying optional, carrier-imposed fees such as the PUF." (3d Am. Compl.¶¶ 44–46.) In addition, Plaintiffs claim that Spirit "was constantly redesigning or reconfiguring the Website and the information contained within." (*Id.* at ¶ 43.) Thus, it is impossible to ascertain with sufficient certainty and detail the manner in which the Spirit website operated for each individual plaintiff and how each plaintiff utilized the website.

The Court already noted the dearth of specific allegations in its previous Order and reminded Plaintiffs that the Eleventh Circuit warned, "in order to sustain a private civil RICO action, [ ] plaintiffs must plead far more than the existence of an unfair or deceptive practice or an unfair method of competition." *Ray v. Spirit Airlines, Inc,* 767 F.3d 1220, 1227 (11th Cir.2014). "There is no inconsistency in a federal system that creates tiered levels of liability by providing stiffer sanctions when an air carrier is involved in criminal *fraud,*

not merely engaged in an unfair or deceptive act." *Id.* Plaintiffs' references to the Department of Transportation's findings are not a sufficient basis to infer mail and wire fraud. Based on the imprecise allegations and the failure to allege deceptive behavior, the Court finds that the Third Amended Complaint does not include necessary allegations for a RICO violation. Therefore, allowing leave to file the Third Amended Complaint is futile because the Complaint, as amended, would still be properly dismissed. *Perlman v. Wells Fargo Bank, N.A.,* 559 Fed.Appx. 988, 994 (11th Cir.2014).

### 4. Conclusion

Yet again, Plaintiffs present their claims, coupled with a screen-shot of Spirit's website, and ask that the Court infer deception and willful deceit. Yet in *Bell Atlantic Corp. v. Twombly* the Supreme Court explained that where a complaint alleges facts that "could very well signify" an unlawful act, the Court need not accept that inference when there is "an obvious alternative explanation." 550 U.S. at 567, 127 S.Ct. 1955. When "[d]etermining whether a complaint states a plausible claim for relief" a "reviewing court" should "draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint ... has not shown that the pleader is entitled to relief." *Id.* (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *accord Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1290 (11th Cir.2010). That precisely describes the Third Amended Complaint. An obvious alternative to the conclusion Plaintiffs asks the Court to draw is that Spirit and its independent contractors were engaged in aggressive, perhaps even deceptive, but not fraudulent business activities. Not ev-

ery deceptive and unfair business practice is a RICO violation. Further, a RICO claim requires a showing of a distinct racketeering enterprise, which is not present here. An obvious alternative explanation to Plaintiffs' allegations is that Spirit was engaged in routine business activities with consultants and agents. Without more, the Court cannot infer that these entities constituted a distinct racketeering enterprise.

During oral argument Plaintiffs stood by their Third Amended Complaint and did not indicate that they were willing to amend their complaint again to correct the Court's noted deficiencies. Accordingly, it is not necessary to allow leave to amend. For the reasons stated above, the Court **denies** Plaintiffs' Motion to Set Aside Judgment (ECF No. 91.) The Court **directs** the Clerk to **close** the case.

**Done and Ordered.**

