[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13792

_____

D.C. Docket No. 0:12-cv-61528-RNS

BRYAN RAY,
on behalf of himself and all others similarly situated,
GRETEL DORTA,
MICHAEL DIORIO,
Ph.D.,
DEBORAH GIBSON,
JENNIFER SILY,
DONNA TILTON,
JOSH RUBIN,
DONALD M. BADACZEWSKI,

Plaintiffs - Appellants,

versus

SPIRIT AIRLINES, INC.,
a Delaware corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 2, 2016)

Before MARCUS and FAY, Circuit Judges, and FRIEDMAN,[*] District Judge.

MARCUS, Circuit Judge:

In this civil RICO case, plaintiffs seek to represent a class of customers claiming that Spirit Airlines, Inc. ("Spirit") engaged in an elaborate criminal enterprise involving the use of mail and wire fraud. The complaint specifically alleged that Spirit portrayed its Passenger Usage Fee as a government-imposed or authorized fee when, in fact, it was merely a portion of the base fare price of an airline ticket charged by the airline.

This is the second time this case has come before our court. The first time, we reversed the district court's conclusion that the Airline Deregulation Act, Pub. L. No. 95–504, 92 Stat. 1705, ("ADA") displaced a civil RICO claim that an airline engaged in deceptive practices. Ray v. Spirit Airlines, Inc., 767 F.3d 1220 (11th Cir. 2014). We remanded the case in order to afford the district court the opportunity to determine in the first instance whether the plaintiffs had adequately pled a RICO claim. Id. at 1229. On remand, the district court dismissed the plaintiffs' second amended complaint for failure to state a claim. As we see it, the district court reached the right answer for two independent reasons: the plaintiffs

---

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

2

failed to adequately allege proximate cause; and they also failed to properly plead the existence of a RICO enterprise.  Thus, we affirm.

## I.

Plaintiffs commenced this civil suit against Spirit under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, in the United States District Court for the Southern District of Florida, alleging that Spirit conducted an enterprise by means of racketeering activity -- here, two or more predicate acts of mail and wire fraud involving the concealment and misrepresentation of airfares and user fees.  Plaintiffs seek to represent a class consisting of all Spirit domestic and international customers who, within the applicable statute of limitations, incurred a Passenger Usage Fee "as a result of Spirit's practice of assessing and collecting baseless hidden fees."

Plaintiffs' second amended complaint alleged these basic facts.  Spirit holds itself out as an "Ultra Low Cost Carrier" offering airfares at rates lower than other providers.  These cheap fares purportedly disguise the total cost of travel because Spirit forces consumers to pay unbundled charges traditionally included in the price of an airline ticket.  Specifically, Spirit charges a Passenger Usage Fee to all consumers who buy tickets through its website or call center.  When searching for flights on Spirit's website, a consumer sees only the base fares.  Once he has selected a flight, a webpage directs him to "confirm" the flight on a page that

3

displays both the base fare and an undifferentiated amount labeled "Taxes & Fees." For a breakdown of these charges, the consumer then must click on an additional link for "more information," which listed a "Passenger Usage Fee" alongside government taxes and fees. Plaintiffs alleged that this placement was a coordinated effort to conceal the true nature of the fee by leading customers to believe that it was an official government tax or sanctioned fee.

The complaint listed seven named plaintiffs with the approximate dates on which they had purchased tickets and (for most of them) the amount they were charged for the Passenger Usage Fee. According to plaintiffs, Spirit committed mail and wire fraud when it used the internet to advertise and engage in sales with the deceptive inclusion and placement of the Passenger Usage Fee. The complaint also generally asserted that the plaintiffs and other members of the proposed class "were harmed in that they relied to their detriment on Spirit's conduct and, as a result, needlessly incurred excessive and unconscionable [Passenger Usage Fees]."

The complaint further alleged that Spirit engaged in this fraudulent activity while associated with, operating, or controlling a RICO enterprise. The enterprise allegedly consisted of Spirit itself, along with two of its corporate officers and a variety of outside consultants (both individual and corporate) who provided various services for Spirit. Specifically, the enterprise was said to consist of: (1) Spirit; (2) Spirit officers and executives, particularly Chief Executive Officer Ben

4

Baldanza and Chief Marketing Officer/Senior Vice President Barry Biffle, who orchestrated the allegedly fraudulent scheme; (3) Navitaire, a wholly owned subsidiary of Accenture, LLC, which provided a platform for ticket sales that had been customized to conceal the Passenger Usage Fee; (4) Colt Cooper, an airline reservation software consultant who helped Spirit implement its website and reservation system; (5) Objectart Solutions, LLC, and its owner Kenneth Ramirez, another software consultant who was involved in the development, management, and support of the ticketing website; and (6) MSP Communications, Inc., and its president, Misty Pinson, who were responsible for public relations surrounding the Passenger Usage Fee. The complaint further recited that the members of the enterprise shared the common purpose to "increase and maximize the revenue of Spirit Airlines by increasing the [Passenger Usage Fee] and other carrier-imposed fees through a scheme that, in part, omitted and misrepresented that the fees were not related to government taxes and other permitted fees for services but were a bottom-line assessment for Spirit." The allegations included that the members of the enterprise "shared the bounty of their enterprise" by sharing in the "benefit" derived from concealing the Passenger Usage Fee. But nothing in the complaint alleged that the consultants' fees were tied to the deceptive collection of the Passenger Usage Fee as opposed to simply being compensation for general business services rendered.

5

The district court granted Spirit's first motion to dismiss the second amended complaint, concluding that because the Airline Deregulation Act preempted all state and federal common law claims, it also prohibited a RICO action.  The district court found that Congress intended the Department of Transportation to be the sole legal control on deceptive airfare, fees, and fare advertising.  On appeal, we reversed, holding that, although the ADA preempted state law, it said nothing about preempting federal causes of action such as RICO.  Ray, 767 F.3d at 1221.  We concluded that the ADA did not repeal the application of the civil provisions of RICO, either expressly or by implication.  Id. at 1229.  We reasoned that RICO and the ADA are capable of coexistence because they feature different requirements and offer different protections.  Id. at 1226.  Thus, for example, we observed that it is far more difficult to establish a RICO predicate act like mail or wire fraud than to prove a violation of the Department of Transportation's regulations concerning unfair or deceptive practices.  Id. at 1226-27.  Mail and wire fraud are specific intent crimes, whereas the DOT need not find a specific intent to deceive or commit fraud or injury "before levying penalties or ordering a carrier to alter an unfair or deceptive practice."  Id. at 1226.  Moreover, we noted that civil RICO also provides for treble damages.  Id. at 1227.  In short, we concluded that the Airline Deregulation Act is wholly different from RICO and that civil RICO claims are not barred by the ADA.

6

Our ruling, however, passed no judgment on the adequacy of the plaintiffs' RICO pleading, remanding the matter to the district court to make that determination.  Id. at 1222, 1229.

Back in district court for round two, the defendants successfully moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  First, the district court found that the plaintiffs had failed to sufficiently plead the existence of a RICO enterprise.  The plaintiffs had failed to adequately allege that the various parties were engaged in an ongoing relationship with the common purpose of defrauding Spirit customers.  Because the complaint made no showing that the various members of the alleged enterprise actually intended to participate in Spirit's scheme to conceal the Passenger Usage Fee or, indeed, even knew about the scheme, the district court concluded that there was no basis to infer that the members acted as part of a single enterprise designed to defraud customers.  Moreover, the district court determined that the complaint failed to meet Fed. R. Civ. P. 9(b)'s specificity requirements.[1]  The district court highlighted that the complaint failed to plead, among other salient details, the precise statements in Spirit's advertisements that were allegedly deceptive, where the plaintiffs saw the advertisements, the costs of the tickets the plaintiffs

---

[1] Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

purchased, and the steps the plaintiffs took on the website when they purchased tickets.  Having concluded that the complaint failed to adequately state a claim for civil RICO, the district court granted the plaintiffs leave to file a third amended complaint by June 18, 2015 if there was a good faith basis for doing so.  That deadline was later extended until June 29, 2015.

The plaintiffs did not file a third amended complaint during that timeframe. Therefore, the district court entered final judgment on the matter on June 30, 2015. The same day, however, plaintiffs filed a motion for relief from the judgment pursuant to Fed. R. Civ. P. 60(b)(1), claiming that a calendar error had led to their failure to file their third amended complaint.  With that, the plaintiffs also filed their third amended complaint.  However, the changes between the second and third amended complaints were exceedingly minimal.  The most prevalent change was the complaint's re-characterization of its description of the fees; rather than allege that the fees were hidden, the third amended complaint said that they amounted to fraudulent misrepresentations.  The third amended complaint added no new facts about the actions of the named plaintiffs, nor did it materially alter the description of the alleged fraud or the members and purpose of the alleged enterprise.

The district court concluded that the plaintiffs' delayed filing of the third amended complaint was the result of excusable neglect and so granted in part relief

8

from the judgment.  But, because the third amended complaint failed to overcome the various deficiencies that had led it to dismiss the second amended complaint, the district court found that it would be futile to reopen its judgment and allow the complaint to be pled on the latest amendation.  Thus, it denied the plaintiff's Rule 60(b) motion for relief from judgment and closed the cause.

The plaintiffs timely filed this appeal, challenging the order dismissing the second amended complaint, the judgment, and the order denying them relief from the judgment.

## II.

We review <u>de novo</u> the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  <u>Simpson v. Sanderson Farms, Inc.</u>, 744 F.3d 702, 705 (11th Cir. 2014).  We accept, as we must at this stage, the allegations in the complaint as true and construe them in the light most favorable to the plaintiffs.  <u>Ironworkers Local Union 68 v. AstraZeneca Pharm., LP</u>, 634 F.3d 1352, 1359 (11th Cir. 2011).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  We are, of course, free to affirm the district court's dismissal on

9

"any ground that is supported by the record." United States v. Elmes, 532 F.3d 1138, 1142 (11th Cir. 2008).

There is some confusion between the parties as to whether the second or third amended complaint is the operative pleading for the purposes of this appeal. At bottom, as the parties agree, it matters little which complaint we consider because the differences between the two are minimal and immaterial. To the extent it matters at all, the second amended complaint is the operative one because the district court denied leave (albeit retroactively) to the plaintiffs to file a third amended complaint. Thus, when considering whether the dismissal was appropriate, we look to the second amended complaint. But when we review whether to permit further leave to amend the complaint still again, we may look to the third amended complaint as a reliable indicator of whether allowing future amendments would be futile.

**III.**

Congress enacted RICO in 1970, prohibiting racketeering activity connected to interstate commerce. Ray, 767 F.3d at 1224. The statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In

10

addition to creating criminal penalties for racketeering activities, the statute also created a private, civil cause of action.  Thus, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).  "To recover, a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts."  Ray, 767 F.3d at 1224.  A civil plaintiff must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282–83 (11th Cir. 2006), abrogated on other grounds as recognized in Simpson, 744 F.3d at 714–15.  "The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud."  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008).

Although initially enacted to fight organized crime, the Supreme Court has rejected a reading of RICO that applies only where the pattern of conduct is "characteristic either of organized crime in the traditional sense, or of an organized-crime-type perpetrator, that is, of an association dedicated to the

11

repeated commission of criminal offenses." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 243 (1989). So limited a reading of the statute, the Supreme Court has concluded, is unsupported by the text or legislative history of RICO. Id. at 244. To the contrary, "the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes." Boyle v. United States, 556 U.S. 938, 944 (2009) (internal quotation marks omitted); see also Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497–98 (1985). With that background, we examine this civil RICO complaint and ultimately conclude that it fails to state a claim.

### A.

The second amended complaint fails in the first instance because it does not adequately plead that the plaintiffs suffered injury as a result of Spirit's purported mail and wire fraud. The RICO statute provides a cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). The Supreme Court has been clear that a party is only entitled to recover under RICO "to the extent that[] he has been injured in his business or property by the conduct constituting the violation." Sedima, 473 U.S. at 496. Thus, a defendant who commits an act of racketeering is "not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." Id. at 496–97 (quoting Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, 747 F.2d 384,

398 (7th Cir. 1984)).  Rather, pleading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity -- here, the misrepresentation of the Passenger Usage Fee through mail and wire fraud -- was the but-for and proximate cause of the plaintiffs' injuries.  See Simpson, 744 F.3d at 712; Williams, 465 F.3d at 1287.  The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect.  See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Williams, 465 F.3d at 1287–88.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza, 547 U.S. at 461; see also Williams, 465 F.3d at 1287.  The injurious conduct need not be the sole cause of the plaintiffs' injuries, but there must be "some direct relation" between the conduct and the injury to sustain a claim.  Williams, 465 F.3d at 1287–88 (quoting Anza, 547 U.S. at 457).  Notably, the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action -- the injury must be direct.  Hemi Grp., LLC v. City of New York, 559 U.S. 1, 12 (2010) (plurality opinion); Williams, 465 F.3d at 1291.  Thus, we have previously held that plaintiffs did not adequately plead a RICO claim where their complaint asserted only the bald conclusion that the plaintiffs relied on a misrepresentation without showing how that reliance was manifested.  Ambrosia Coal & Constr. Co. v. Pages

13

Morales, 482 F.3d 1309, 1317 & n.12 (11th Cir. 2007).  Moreover, we have held

that plaintiffs lack standing to bring a RICO claim unless their injuries were

proximately caused by the RICO violation.  Bivens Gardens Office Bldg., Inc. v.

Barnett Banks of Florida, Inc., 140 F.3d 898, 906 (11th Cir. 1998) (citing Pelletier

v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991), abrogated on other grounds by

Bridge, 553 U.S. 639).

Here, the plaintiffs alleged only that they "and the other members of the

proposed class were harmed in that they relied to their detriment on Spirit's

conduct and, as a result, needlessly incurred excessive and unconscionable

[Passenger Usage Fees]."  But this allegation amounts to little more than a

"[t]hreadbare recital[] of the elements of a cause of action, supported by mere

conclusory statements," which is plainly insufficient to support a cause of action.

Iqbal, 556 U.S. at 678; cf. Ambrosia Coal, 482 F.3d at 1317 & n.12.  The plaintiffs

argue that "merely purchasing a ticket and paying the unlawful passenger usage fee

in the process, by itself, amounts to reliance on Spirit's fraudulent conduct."  We

find this argument wholly unconvincing.  While paying the fee may establish an

injury-in-fact, it does not in any way establish that the plaintiffs sustained an injury

as the direct result of Spirit's claimed fraudulent misrepresentations.  The mere fact

of having been misled does not ineluctably give rise to a RICO cause of action

14

unless the act of misleading the plaintiffs actually caused them injury in their business or to their property that they would not otherwise have suffered.

To be sure, RICO does not contain a requirement that the plaintiff personally relied on the defendant's fraudulent misrepresentation. Bridge, 553 U.S. at 648–49. In Bridge, the Supreme Court recognized a civil RICO claim where the defendants had submitted fraudulent documents to Cook County, Illinois, which was conducting property auctions, thereby giving the defendants an unfair advantage over the plaintiffs in securing property at those auctions. Id. at 642–44. The Court ruled that the plaintiffs could proceed with the lawsuit even though it was Cook County, and not the plaintiffs, that had relied on the misrepresentations. But the Court was clear that its holding dismissing the need for first-party reliance on the fraud did not mean that a party can prevail without showing that someone had relied on the fraud. Id. at 658. Without reliance on the fraud by someone -- in Bridge, Cook County -- the plaintiffs would not be able to show that they were injured by reason of the alleged racketeering activity. And a showing of direct injury is required to sustain a RICO claim. Unable to establish even but-for causation, such a plaintiff necessarily would be unable to meet the higher burden of showing that the racketeering activity proximately caused the plaintiff's injuries. See Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992); Williams, 465 F.3d at 1287.

Whatever else the second amended complaint asserts, it does not allege a direct link -- or, indeed, any link at all -- between Spirit's presentation of its Passenger Usage Fee and the plaintiffs' decision to purchase tickets on Spirit's website.  It pleads causation only at the highest order of abstraction and supports the claim only with conclusory assertions; notably absent is an allegation of any specific fact that would make those conclusions plausible.  Thus, the complaint does not so much as tell us the prices that the various plaintiffs paid for their tickets or the prices that other airlines charged for comparable flights, to say nothing of the many factors aside from cost that might induce someone to purchase an airline ticket.  The complaint does not even allege that the plaintiffs would not have purchased their tickets from the Spirit website had they known that the Passenger Usage Fee was not authorized or collected by the government.  Moreover, it strains credulity to insist -- as the plaintiffs must -- that a customer willing to purchase a ticket for $129 in base fare plus an $8.99 Passenger Usage Fee (among other taxes and fees) announced before the tickets were purchased would balk at purchasing a ticket if he knew that the $8.99 fee came from the airline and not the government.  In short, it seems utterly implausible to us that Spirit's customers would have declined to purchase a ticket if, in the "taxes and fees" listing on Spirit's website, they encountered an item titled "Airline-Imposed Passenger Usage Fee."  The plaintiffs have pled nothing even remotely suggesting

16

that they -- or anyone else for that matter -- would have acted at all differently had Spirit been clearer in its presentation and description of the Passenger Usage Fee. Based on the limited facts alleged in this complaint, we cannot come close to drawing a reasonable inference that the plaintiffs would not have purchased their tickets utilizing Spirit's website or call center, even if they had understood the true source of the Passenger Usage Fee.

Plaintiffs, however, cite to our decision in Kemp v. AT&T, 393 F.3d 1354, 1361 (11th Cir. 2004), in arguing that where the allegations of mail or wire fraud involve omissions rather than affirmative misrepresentations, no reliance is necessary. But this does not excuse plaintiffs from adequately pleading proximate cause in their RICO claim. The discussion in Kemp revolved around a challenge to whether AT&T had committed the predicate racketeering acts of mail and wire fraud. Id. at 1359–61. We found that a plaintiff does not have to prove reliance on a fraudulent omission of material information to sustain a claim for mail or wire fraud. Id. at 1361. But finding that a defendant committed a predicate racketeering offense, such as mail or wire fraud, is not the same as finding that it committed a RICO violation. Civil RICO plaintiffs must sufficiently plead both racketeering activity and that the activity caused them some injury. "This is true even when a criminal conviction for the underlying racketeering activity would not require a showing of actual injury, as is the case with mail and wire fraud." Beck

17

v. Prupis, 162 F.3d 1090, 1095 (11th Cir. 1998); see also Pelletier, 921 F.2d at 1499.  Thus, Kemp provides no relief from the requirement that civil RICO plaintiffs properly plead proximate cause for their injuries.  Because the plaintiffs have not pled that they or anyone else relied on Spirit's alleged misrepresentations in purchasing their tickets -- and, thus, have not shown that they were injured "by reason of" a RICO violation -- they have failed to state a claim upon which relief may be granted.

There is no ambiguity in Supreme Court or Eleventh Circuit precedent about the requirement that a civil RICO claim must sufficiently plead proximate cause.  The failure to adequately plead causation is compounded in this case because the district court, in dismissing the second amended complaint for the first time, explained that a RICO claim required a showing of proximate cause and that the plaintiffs had failed "to include any allegations linking [their] loss to the fraud here."  The district court added that if plaintiffs planned to file a third amended complaint, they "should include specific allegations that they would have acted differently" had they known the true nature of the Passenger Usage Fee.  The plaintiffs nonetheless failed to make any averment in their third amended complaint that would tend to show any sort of causal link between the alleged fraud and some injury to the plaintiffs' business or property.  This strongly suggests that allowing further leave to amend the complaint would be futile.  Thus,

18

we affirm the dismissal of this civil RICO complaint because it has failed to adequately plead proximate cause.[2]

## B.

Moreover, the plaintiffs' second amended complaint has failed for a second and independent reason: it has failed to plead the existence of a RICO enterprise because it has not adequately alleged a common purpose shared by Spirit and the other members of the alleged enterprise.  Again, the racketeering enterprise pled here was said to consist of Spirit, two Spirit officers, three software vendors/consultants, and a public relations consultant.  According to the RICO statute, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Thus, the enterprise alleged in this case is an association-in-fact enterprise; it does not itself comprise a legal entity.

---

[2] Because the plaintiffs have failed both to properly plead proximate cause and a RICO enterprise, we need not and do not decide whether they adequately pled the commission of fraud with the particularity demanded by Fed. R. Civ. P. 9(b).  That said, we have serious doubts about whether, were we to consider the matter, the complaint would survive scrutiny under Rule 9(b). As highlighted by the district court, the complaint failed to plead the precise statements in Spirit's advertisements purported to be fraudulent, where the plaintiffs saw the advertisements, the costs of purchased tickets, what steps the plaintiffs took on the website when they purchased tickets, even what date the tickets were purchased in some instances, among other salient details. Indeed, the only plaintiffs who even come close to surviving the particularity requirements demanded by Rule 9(b) are Michael Diorio and Jennifer Sily, who, in contrast to the other plaintiffs, pled the dates on or about which they purchased tickets, where they purchased the tickets (Spirit's website), and cited the amounts they paid in Passenger Usage Fees.

The Supreme Court has instructed us that an association-in-fact enterprise must possess three qualities: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 556 U.S. at 946. It is "simply a continuing unit that functions with a common purpose." Id. at 948. An enterprise need not have a hierarchical structure, specific governing procedures, or fixed roles for its members. Id. at 948. What is required is "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

The second amended complaint fails because it has not plausibly alleged that the technology (Navitaire/Accenture, Colt Cooper, and Objectart) and public relations (MSP Communications) vendors named in the complaint shared a common purpose with Spirit. The complaint charged that the RICO enterprise members had a common purpose "to increase and maximize the revenue of Spirit Airlines by increasing the [Passenger Usage Fee] and other carrier-imposed fees through a scheme that, in part, omitted and misrepresented that the fees were not related to government taxes and permitted fees for services but were a bottom-line assessment for Spirit."[3] Because we cannot accept purely conclusory allegations,

---

[3] Plaintiffs later attempted to alter their own allegations by arguing that any purpose -- for instance, the common purpose of making money -- is sufficient to qualify under the RICO

we look to whether the complaint alleged facts sufficient to give rise to a plausible inference that the various members of the alleged enterprise acted with this common purpose.  Iqbal, 556 U.S. at 678.

Nowhere in the complaint do the plaintiffs allege facts giving rise to a plausible inference that the various technology vendors and consultants, either individually or in corporate form, were in any way involved in the actual decisions of how to portray the Passenger Usage Fee, knew the true nature of the fee, or worked intentionally to misrepresent the fee.  Thus, passing over the complaint's wholly conclusory claims, there is no plausible allegation that these vendors knowingly cooperated with Spirit in a scheme that involved misrepresenting the Passenger Usage Fee.

Consider the following passage from the complaint, which is typical of the allegations against these service providers:

> Objectart Solutions, LLC and its owner Kenneth Ramirez have consulted with Spirit since 2006 in the area of software architecture, development, quality assurance and technology management, including, but not limited to revenue management system interfaces and support and interface systems for the Naitaire ticketing and reservations system.  As such they have been involved with the development management and support of the

---

statute.  But we are bound to examine the sufficiency of the plaintiffs' complaint, not what they argue their complaint could have said.  Moreover, since making money is the purpose of every for-profit corporation, at least based on these pleadings, this purpose is wholly insufficient to establish an association-in-fact enterprise.

revenue management system(s) that allow for Spirit's collection of the deceptive [Passenger Usage Fee] in its client-side reservation and ticketing process.

In short, the plaintiffs allege that Objectart and its owner helped Spirit set up the ticket reservation system for Spirit's website. But this is a wholly innocent activity undertaken as a course of regular business for Objectart. More importantly, this passage is notable for what it lacks. It does not say that Objectart had any control over (or, for that matter, was even aware of) the actual content on the web platform it helped develop. It does not allege that Objectart worked to conceal the true nature of the Passenger Usage Fees. It does not indicate that Objectart and its owner knew that Spirit was engaging in misleading behavior. It does not indicate that Objectart directly profited from the misrepresentation, as opposed to simply receiving a fee for the anodyne services it provided. That Objectart helped set up a platform that Spirit independently misused does not give rise to a plausible inference that Objectart and Spirit acted with the common purpose, let alone the common purpose arising out of a continuing relationship, to misrepresent the Passenger Usage Fee or defraud Spirit customers.

The allegations regarding Cooper and Accenture/Navitaire suffer from similar failings. For instance, the allegations against Cooper assert:

> Colt Cooper[] [is] an airline reservation software consultant and specialist in Accenture's Navitaire platform, who has worked extensively with Spirit to implement its website and reservation system. Beginning

22

in July 2007, Cooper converted Spirit's legacy airline reservation system for additional capabilities. Cooper was involved in several development phases of the reservation software to the specifications of the enterprise, a platform that allows for concealment of the [Passenger Usage Fee] in the booking process[.]

Like the allegations against Objectart, the allegations against Cooper stop short of saying that he was responsible for any of the content on the platform he helped develop. The complaint also does not so much as suggest that Cooper was personally involved in the purported concealment of the Passenger Usage Fee, saying only that he worked on a platform that "allows" for the concealment. Indeed, the complaint does not plead any facts suggesting that Cooper knew Spirit was engaging in misleading behavior or that he shared a common purpose of engaging in (or even consciously enabling) that behavior.

Likewise, the allegations against Accenture/Navitaire only allege in conclusory fashion that the company had any active role in facilitating and promoting Spirit's alleged fraud. Moreover, the claim that "Navitaire's Revenue and Decision Support products and services have been employed and manipulated by Spirit in devising ways to maximize revenues through hidden fees" is a far cry from saying that Navitaire shared the common purpose of defrauding Spirit customers. Spirit's alleged misuse of a software platform does not suggest that the maker of that platform knew anything of, let alone shared, Spirit's allegedly fraudulent purpose.

23

Nor do the plaintiff's allegations concerning communications consultant MSP Communications and its president, Misty Pinson, fare any better. The complaint alleged that MSP and Pinson were largely responsible for the public relations regarding Spirit's business model in general and the Passenger Usage Fee in particular. But, as with the software consultants that we have already discussed, there is not the slightest factual averment or indication that MSP or Pinson played any role in determining how the fee would be presented on Spirit's website, where the complaint alleged the fraud occurred. Indeed, there are no claims that MSP or Pinson had any involvement with Spirit's website or method of charging fees at all. Moreover, because the plaintiffs disclaimed any reliance on misrepresentations in Spirit's advertisements in the district court, it is unclear how the public relations efforts by MSP and Pinson relate in any way to the wrongs alleged in the complaint. That a public relations firm engaged in public relations work when Spirit hired it to do so hardly gives rise to a plausible inference that MSP and Pinson shared a common purpose with Spirit of scheming to misrepresent the Passenger Usage Fee.

Moreover, the complaint's general allegations about the operations of the enterprise do no better in plausibly alleging a common purpose among Spirit and its various vendors to misrepresent the Passenger Usage Fee. Thus, for example, the complaint alleged that "Spirit designed and employed an airline ticket booking

24

system to conceal and assess fees and charges, including the [Passenger Usage Fee], via a website process designed specifically to obfuscate, omit and/or misrepresent the assessment and foundation for the [Passenger Usage Fee]." While this may allege Spirit's purpose, it says nothing about the actions of the other members of the putative enterprise. The next paragraph of the complaint alleged that "the concerted scheme involved at least two freestanding entities . . . to devise a registration practice of generating fees by intentionally omitting and/or misrepresenting their actual purpose." But this was pled in a wholly conclusory manner unsupported by any factual averments concerning the specific roles played by the vendors to support this purpose. This allegation just claimed that other members of the alleged enterprise were involved in intentionally misrepresenting the source of the Passenger Usage Fee, but without offering any factual averments to make the assertion plausible. Similarly, the allegation that Spirit and its associates-in-fact engaged in strategic planning, targeted marketing studies, and customizing website technology described only common business practices and did not offer facts suggesting that the consultants and vendors working with Spirit were aware of or participated in Spirit's alleged misrepresentations. Absent facts plausibly suggesting that Spirit and the other alleged members of this association-in-fact enterprise shared the common purpose alleged in the complaint, this RICO pleading fails. On this bare record, Spirit, the outside consultants, software

25

developers, and their officers, agents, and employees were engaged in no more than a series of legitimate commercial transactions.

Finally, the allegations concerning Spirit CEO Ben Baldanza and its Chief Marketing Officer/Senior Vice President Barry Biffle regarding the enterprise's common purpose also seem to us to be insufficient. The complaint alleged that Baldanza and Biffle orchestrated Spirit's "ancillary revenue model" whereby customers pay "unbundled charges that have traditionally been included in the total price of an airline ticket." The complaint then alleged that the ancillary revenue model was "designed and/or adopted by the Enterprise to be intentionally confusing and deceptive in order to fraudulently collect additional[] moneys from Spirit customers." But the complaint did not say who within the enterprise made that model intentionally confusing. It did not allege that Baldanza or Biffle instructed anyone within the alleged enterprise to misrepresent the Passenger Usage Fee or that they were even aware the misrepresentation existed. While Baldanza, Biffle, and Spirit most assuredly shared a common purpose of promoting Spirit's corporate profits and welfare, the complaint did not allege facts sufficient to give rise to a reasonable inference that the common purpose they shared included a scheme to misrepresent fees or otherwise defraud Spirit customers.

26

## C.

Even, however, were we to assume that Baldanza and Biffle shared a common purpose to misrepresent the source of the Passenger Usage Fee -- making it look like it was a tax imposed by the government rather than a fee imposed by the airline -- the plaintiffs' association-in-fact pleading would still fail because in an association-in-fact enterprise, a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation. Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant "person" and the "enterprise" itself. The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161–62 (2001); see also United States v. Goldin Indus., Inc., 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc) ("We now agree with our sister circuits that, for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise."). This requirement arises from the statutory language making it "unlawful for any person employed by or associated with any enterprise" to engage in racketeering activities through that enterprise. 18 U.S.C. § 1962(c). It does not make sense for a person to employ or associate with himself. Thus, an

enterprise may not simply be a "'person' referred to by a different name." Cedric Kushner Promotions, 533 U.S. at 161.

The Supreme Court has held that, where the defendant is a natural person, he is distinct for RICO purposes from a closely held corporation of which he is the president and sole shareholder. Cedric Kushner Promotions, 533 U.S. at 160. That case involved allegations that the boxing promoter Don King conducted the affairs of Don King Productions (a corporation of which he was the president and sole shareholder) through a pattern of racketeering activities consisting of fraud and other RICO predicate crimes. Id. at 160–61. The Court started its analysis with the premise that a corporation and its owner/employee are legally separate and distinct entities. Id. at 163. Moreover, RICO was designed to protect legitimate enterprises from becoming vehicles through which unlawful activities are committed. Id. at 164. "A corporate employee who conducts the corporation's affairs through an unlawful RICO pattern of activity uses that corporation as a vehicle whether he is, or is not, its sole owner." Id. at 164–65 (internal quotation marks and citation omitted, alteration adopted). Thus, RICO's distinctiveness requirement is met where an individual defendant engages in a pattern of racketeering activity through a corporation, even a corporation of which the defendant is the sole shareholder. Id. at 166. But the Court's holding went no further. Indeed, the Court explicitly disclaimed deciding the "quite different"

28

issue, arising in this case, where the defendant "person" is a corporation and is alleged to have engaged in an enterprise with its officers, employees, and agents. Id. at 164.

The plaintiffs argue that the distinction highlighted by the Supreme Court is not one that compels a different result because the relationships alleged in this case are just as much an enterprise as those found in Cedric Kushner. But recognizing that distinction -- far from being an exercise in sophistry -- is very important. In this case, the corporation is the defendant person, and the corporation, together with its officers, agents, and employees, are said to constitute the enterprise. Every circuit that has squarely decided this matter has recognized this distinction. See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 121 (2d Cir. 2013); Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226–28 (7th Cir. 1997); Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343–44 (2d Cir. 1994); Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp., 965 F.2d 879, 886 (10th Cir. 1992).

We agree with the views expressed by our sister circuits on this matter. Thus, for example, the Second Circuit has ruled on this issue at least twice. First, in Riverwoods, the court rejected allegations of a RICO enterprise consisting of a defendant corporation and three of the corporation's vice presidents. Riverwoods, 30 F.3d at 343–45. The Second Circuit held that because a corporation can only

29

act through its employees and agents, the fact that it does so is insufficient to establish the existence of an enterprise. Id. at 344. Likewise, in Cruz, the Second Circuit rejected claims of a RICO enterprise consisting of a defendant corporation, its parent company, a former equity stakeholder, the CEO, the managing director and corporate counsel, and various software companies that assisted the corporation in developing its technological platform. Cruz, 720 F.3d at 120–21. The court rejected the RICO claims as to the corporate officers because a defendant corporation cannot form a RICO enterprise with its own employees or agents who are carrying on the normal work of the corporation. Id. at 121. The former stakeholder and software companies were deemed incapable of being part of the enterprise because there was no pleading that they were aware of the allegedly fraudulent activities of the corporation and, therefore, could not have been working toward the common purpose of committing fraud. Id. Finally, the corporation was held not to be able to form an enterprise with its parent company where they shared a single, unified corporate structure. Id.

The Tenth Circuit has also declined to find a RICO enterprise where a corporate defendant was accused of acting through its employees and agents. Liberty Grp., 965 F.2d at 886. There, the alleged enterprise consisted of a corporation, the corporation's general partners (both legal entities in their own right), the corporation's successor in interest, a corporate officer, and a corporate

30

employee.  Id. at 881.  The Tenth Circuit held that these individuals and entities lacked the requisite distinctiveness to form a RICO enterprise.  Id. at 886.

Finally, the Seventh Circuit in Fitzgerald affirmed the dismissal of a RICO claim against the Chrysler Corporation where the alleged enterprise consisted of the corporation, subsidiaries of the corporation, franchised Chrysler dealers, and trusts controlled by the corporation.  Fitzgerald, 116 F.3d at 226.  The Seventh Circuit concluded that the various parties to the alleged enterprise were either part of the same corporation or else they served a role that could have been filled directly by the corporate employees so that it made no sense to treat them as distinct entities for RICO purposes.  Id. at 228.

We, too, hold that plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees.  For our purposes, there is no distinction between the corporate person and the alleged enterprise.  See Riverwoods, 30 F.3d at 344; Liberty Grp., 965 F.2d at 886.  When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself.  In that situation, the rule announced in Cedric Kushner makes sense.  In contrast to an individual, a corporation cannot act except through its officers, agents, and employees.  Thus, a corporate defendant acting through its officers,

31

agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate "person" by a different name. Cf. Cedric Kushner Promotions, 533 U.S. at 161.

Moreover, RICO was designed -- at least in part -- to prevent an individual engaged in racketeering activities from increasing his power to do wrong by taking over an apparently legitimate firm. Fitzgerald, 116 F.3d at 227. Doing so allows that individual to "use[] the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person." Id. But here, it is hard to see how Spirit increased its authority or legitimacy, to say nothing of making its allegedly criminal acts more difficult to discover, by operating in the manner that every corporation by necessity acts -- through its officers, agents, and employees.

Finally, while RICO was intended to be interpreted broadly, permitting plaintiffs to plead an enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints. See Cruz, 720 F.3d at 121; Riverwoods, 30 F.3d at 344. Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation. Fitzgerald, 116 F.3d at 226. No matter how broadly RICO is interpreted, there is no reason to think that

32

Congress intended the law to provide treble damages in every conceivable case of corporate fraud.

In this case, there is no distinction between the corporate defendant and an enterprise composed of the corporation and some of its corporate officers. While the outside vendors may be distinct, the second amended complaint did not plausibly allege that they shared a common purpose with Spirit to misrepresent the Passenger Usage Fee, as we have already discussed. And the corporate officers and agents plainly are not distinct from the corporate defendant itself for purposes of a RICO association-in-fact enterprise. In short, the district court correctly dismissed the plaintiffs' second amended complaint because the plaintiffs failed to adequately allege the common purpose or distinctiveness required of a RICO enterprise.

**AFFIRMED.**

33