[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10597

_____

D.C. Docket No. 1:17-cv-01689-TWT

KEITHROY B. NURSE,

Plaintiff - Appellant,

versus

THE CITY OF ALPHARETTA,
ROBERT J. REGUS,
KATHY BOTT,
WESLEY MCCALL,
SANDY WEST, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 31, 2019)

Before MARCUS and HULL, Circuit Judges, and WRIGHT,[*] District Judge.

PER CURIAM:

Appellant Keithroy Nurse, an African American man, was fired from his job as a police officer with the City of Alpharetta following an internal affairs investigation. He now sues the City and five individually named defendants (officials of the City and the police department) claiming race discrimination in violation of Title VII and the Equal Protection Clause, as well as a violation of his due process rights embodied in the Fourteenth Amendment. Despite having been given an opportunity to amend his complaint, Nurse's pleading remained wholly conclusory and offered no factual allegations raising his claims beyond the speculative level. Accordingly, we affirm the district court's dismissal of his complaint for failure to state a claim.

## I.

In 2016, Keithroy Nurse, formerly a police officer with the City of Alpharetta, was accused of sexual assault after giving an intoxicated woman a courtesy ride to her hotel. The City of Alpharetta Police Department commenced an internal affairs investigation, while Roswell, a neighboring city where the incident was alleged to have occurred, began a criminal investigation. The criminal investigation was later dropped and charges were never brought. But at

---

[*] Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, sitting by designation.

the conclusion of the internal affairs investigation, the City of Alpharetta charged Nurse with violating five City policies,[1] and terminated his employment. The City also filed a report with the Georgia Peace Officers Standards and Training Council ("POST") and Nurse alleges that as a result of this report, POST revoked his certification as a law enforcement officer.

Nurse claims that the five alleged policy violations were either fabricated or inflated in order to provide a basis for his termination. He says that the City has a "policy of progressive discipline," but the policy was never applied to Nurse when he was "terminated for minor policy violations." Nurse claims, albeit only at the highest order of abstraction, that he was "subjected to far more severe punishment than that given to the white police officers of Alpharetta Police Department," and that each of the named defendants "knew and approve[d of] the disparity of treatment." He also claims, again only very generally, that "the City of Alpharetta has created a hostile work environment for African American males . . . through a pattern of more severe disciplinary action to African Americans [than] their white counterparts."

---

[1] The five alleged policy violations were the following: (1) allowing a civilian to ride in the front seat of his patrol vehicle; (2) failing to inform his supervisor that he was still working after the scheduled end of his shift; (3) failing to notify his supervisor that he was giving a civilian a courtesy transport; (4) neglect of duty in failing to keep his commanding officer informed of his current address; and (5) failing to completely and truthfully answer all questions in the course of the internal affairs investigation.

3

In July 2016, Nurse filed a charge of racial discrimination with the EEOC and received a Right to Sue letter.  In May 2017, Nurse commenced this lawsuit against the City of Alpharetta and five individually named defendants -- City Administrator Robert Regus, Human Resource Manager Kathy Bott, Deputy Director of Public Safety Wesley McCall, Captain Sandy West, and Director of Public Safety Gary D. George -- in the United States District Court for the Northern District of Georgia.  Each of the defendants moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court agreed, dismissed the complaint without prejudice, and gave Nurse 30 days to file an amended complaint.  The order explained that the original complaint was a "prototypical 'shotgun pleading,'" that failed to specify which causes of action were contained in each count and against which defendants, and thus failed to give the defendants adequate notice.  The district court ordered Nurse to replead and explained that "the new pleading must specifically define the causes of action in separate counts and indicate which claims are being asserted against which defendants."

On October 17, 2017, Nurse filed the operative First Amended Complaint. Though the pleading is hardly a model of clarity, Nurse appears to have brought four claims in three counts: (1) Title VII race discrimination, (2) Title VII hostile work environment, (3) discrimination in violation of the Equal Protection Clause,

4

and (4) a violation of his procedural rights under the Due Process Clause. Appellees again moved to dismiss for failure to state a claim.[2] And again the district court granted the motion. Nurse now appeals the district court's judgment to this Court.

## II.

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. We accept, as we must at this stage, the allegations in the complaint as true and construe them in the light most favorable to the plaintiff[]." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). We then ask whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Ray, 836 F.3d at 1347–48. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## A.

Title VII prohibits employment discrimination on the basis of race. 42 U.S.C. § 2000e-2(a). An employer may run afoul of Title VII when it "has 'treated

---

[2] Count 1 of the amended complaint appears to allege discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, while Count 2 appears to assert a claim under the Due Process Clause of the Fourteenth Amendment. Count 3, meanwhile, seems to include Title VII claims for both race discrimination and a hostile work environment.

[a] particular person less favorably than others because of' a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985–86 (1988)). "Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case, it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (quoting Twombly, 550 U.S. at 556).

Nurse alleges in his amended complaint that he was "subjected to far more severe punishment than that given to the white police officers of Alpharetta Police Department." In Count 3, he claims that "Afro-American police officers were subjected to more severe disciplinary actions than the white police officers," that "Afro-American police officers were denied promotions and advancement opportunity given to white officers," and that he "has been subjected to discriminatory treatment based upon his race." The problem with the pleadings, as the district court properly recognized, is that they are framed in a wholly speculative and conclusory way. See Davis, 516 F.3d at 974. The Plaintiff has alleged no facts whatsoever suggesting intentional discrimination. He has offered neither a comparator nor any other specific facts that would raise his claim above the purely speculative. We simply cannot tell who was treated differently on

6

account of race or how.  Thus, the district court did not err in dismissing Nurse's

Title VII race discrimination claim for failure to state a claim.

Count 1 of the amended complaint also appears to allege a claim for race

discrimination in violation of the Equal Protection Clause.  Because

"discrimination claims, including hostile work environment claims, brought under

the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and

employ the same analytical framework," Nurse's equal protection claim

necessarily fails for the same reasons his Title VII race discrimination claim fails.

Bryant v. Jones, 575 F.3d 1281, 1298 n.20 (11th Cir. 2009).

As for Count 3, Nurse also appeared to allege a hostile work environment in

violation of Title VII.  "To establish a hostile work environment claim under Title

VII, a plaintiff must show that 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of . . . employment and create an abusive working environment.'"

Trask v. Sec'y, Dept. of Veterans Affairs, 822 F.3d 1179, 1195 (11th Cir. 2016)

(quoting Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012)).  A hostile work

environment claim, then, requires a plaintiff to establish that "(1) he belongs to a

protected group; (2) he was subjected to unwelcome harassment; (3) the

harassment was based on his membership in the protected group; (4) it was severe

7

or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010).

Nurse's hostile work environment claim is similarly deficient.  He has alleged no facts at all beyond the general and conclusory claims that white officers were subjected to less severe punishment.  As for a hostile work environment, the most specific allegation we can find in the amended complaint is that the City and individual defendants "have created and maintained [a] hostile work environment through a pattern of more severe disciplinary action to African Americans [than] their white counterparts."  Again, we don't know who in the City created a hostile work environment, how any of this was done, or who was affected by the claimed misconduct.  In essence, Nurse has taken his Title VII race discrimination claim and alleged in an utterly conclusory fashion that this discrimination created a hostile work environment.  He has offered nothing further to establish a hostile work environment.  The district court did not err in dismissing Nurse's Title VII hostile work environment claim either.

B.

Finally, in Count 2, Nurse brought a claim under the Due Process Clause of the Fourteenth Amendment grounded on an allegedly false report sent by the City

8

to POST, which resulted in the revocation of his POST law enforcement officer certification.  Under the Fourteenth Amendment, a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Accordingly, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally [] inadequate process."  J.R. v. Hansen, 803 F.3d 1315, 1320 (11th Cir. 2015) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)).  "Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, we -- when determining if a plaintiff has stated a valid procedural due process claim -- look to whether the available state procedures were adequate to correct the alleged procedural deficiencies."  Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (per curiam).  "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process."  Id.

In Cotton, a panel of this Court found that mandamus in Georgia's state courts was a constitutionally adequate procedure.  See id. at 1332–33 ("In these circumstances, we believe that Plaintiff would be entitled to seek a writ of mandamus.  Under Georgia law, when no specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek

9

mandamus. . . . If Plaintiff were without another legal remedy and proved in a state mandamus proceeding that Defendants had deprived Plaintiff of his federal liberty interest in his reputation without a hearing, then Plaintiff would have shown that he had a clear legal right to a name-clearing hearing."). Cotton unambiguously compels the result in this case. Nurse could have sought mandamus in a Georgia state court but did not do so. The district court did not err in dismissing his due process claim.

Because we can discern no error in the dismissal of any of Nurse's claims, we affirm.

**AFFIRMED.**

10