[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12225
_____

D.C. Docket No. 1:18-cv-00108-LAG

MICHAEL SMITH,
as next friend of MS,

Plaintiff-Appellant,

versus

CRISP REGIONAL HOSPITAL, INC.,
CRISP REGIONAL HEALTH SERVICES, INC., et al,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(January 22, 2021)

Before ROSENBAUM, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant presents a single issue in this appeal: whether the Hospital-

Defendants' delay in transferring a patient constitutes a violation of the Emergency

Medical Treatment and Active Labor Act (the "Act"). The district court dismissed Appellant's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). With the benefit of oral argument, and after careful review, we affirm.

Appellant brought his minor child, MS, to the emergency room of the Crisp Regional Hospital ("Hospital") at around 9:00 p.m. with symptoms of diabetic ketoacidosis ("DKA"). Around 10:30 p.m., Appellant signed the transfer paperwork for MS to be transferred to the Medical Center of Central Georgia, Children's Hospital in Macon, Georgia, which is about an hour's drive away from the Hospital. At around 2:30 a.m., MS was transported by ambulance to the Children's Hospital, arriving about 3:25 a.m.

Appellant's amended complaint alleged, inter alia, that Crisp Regional Hospital violated the Act by delaying the transfer of MS. He alleged that the delay caused permanent nerve damage to the eyes of MS. The Hospital moved to dismiss the amended complaint on the basis that Appellant had failed to state a claim under the Act, and the district court issued an order dismissing the amended complaint and declining to exercise supplemental jurisdiction over the Appellant's state law claims. We review the district court's dismissal of Appellant's amended complaint de novo. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016)

MS's nerve damage is deeply regrettable. But Appellant's remedy does not

2

lie in the Act.  The Act was enacted to prevent "patient dumping," which is the "practice of some hospitals turning away or transferring indigent patients without evaluation or treatment."  Harry v. Marchant, 291 F.3d 767, 768 (11th Cir. 2002) (en banc).  The Act subjects covered hospitals to two principal obligations.  First, when an individual presents at a covered hospital emergency room, the Act imposes upon the hospital an obligation to provide appropriate medical screening. Id.  "As long as a hospital applies the same screening procedures to indigent patients which it applies to paying patients, the hospital does not violate this section of the Act."  Holcomb v. Monahan, 30 F.3d 116, 117 (11th Cir. 1994) (referring to the medical screening requirement set out in 42 U.S.C. § 1395dd(a)).[1]

A second major obligation imposed on covered hospitals by the Act is set out in § 1395dd(b).  This provision requires a covered hospital—if its screening determines that the individual has an emergency medical condition—to provide stabilization treatment before transferring the individual to another hospital or discharging the individual.  See Harry v. Marchant, 291 F.3d at 768 & n.1.[2]

---

[1]    On appeal, Appellant has abandoned his challenge to the Hospital's screening procedures, which the district court rejected because Appellant failed to allege any deviation from the Hospital's standard screening procedures.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned.").

[2]    Appellant has also abandoned on appeal his challenge to the Hospital's stabilization of MS, which the district court also rejected.  *See Access Now*, 385 F.3d at 1330.

3

Our en banc decision in Harry v. Marchant, in which we analyzed the language of the Act, clearly establishes that the focus of the Act is narrow:

> In prescribing minimal standards for screening and transferring patients, but not for patient care outside of these two narrowly defined contexts, Congress confined [the Act] solely to address its concerns and, at the same time, avoided supplanting available state malpractice and tort remedies.

291 F.3d at 774.  Thus, our case law is well established that the Act "was not intended to be a federal malpractice statute," id. at 770, and "was not intended to establish guidelines for patient care," id. at 773.  The Act "is not designed to redress a negligent diagnosis by the hospital; no federal malpractice claims are created."  Holcomb, 30 F.3d at 117.

There is no provision of the Act suggesting that Congress intended to impose time restrictions with respect to a hospital's decision to transfer a patient to another hospital.  Indeed, the only time restriction in the statute relates not to the transfer decision, but rather to the screening and stabilization requirements.  The Act provides:

> A participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) or further medical examination and treatment required under subsection (b) in order to inquire about the individual's method of payment or insurance status.

42 U.S.C. § 1395dd(h).  Obviously, this provision has no relevance to this case.  Appellant makes no allegation that the delay was "in order to inquire about the

4

individual's method of payment or insurance status." Nor does § 1395dd(h) impose a time obligation on a covered hospital with respect to the transfer of the individual.

We thus conclude that Appellant's claim that the Hospital unreasonably delayed the transfer of MS to the Children's Hospital in Macon does not state a claim of violation of the Act. Rather, Appellant's claim is the kind of claim contemplated by state medical malpractice laws, and the kind of claim that our well-established case law indicates is not implicated by the Act.[3]

In an argument presented to this court for the first time at oral argument, Appellant argued that the hospital's delay in transferring MS violated the Act's requirement of an "appropriate transfer." We reject this new argument. First, the argument was not raised at all in Appellant's brief on appeal. Thus, we conclude that the argument has been abandoned. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not raised on appeal are deemed waived). Second, in the only provision of the Act that requires an "appropriate transfer," the Act precisely defines the meaning thereof. 42 U.S.C. §

---

[3] We also reject Appellant's argument that the Act incorporates the Georgia state law medical malpractice standards. This argument is flatly inconsistent with our well-established case law that the Act does not create federal malpractice claims, but rather avoids supplanting available state malpractice and tort remedies. Harry v. Marchant, 291 F.3d at 770, 774; see also Holcomb, 30 F.3d at 117. The district court in this case declined to exercise supplemental jurisdiction over Appellant's Georgia state law claims, and Appellant does not challenge that decision on appeal.

1395dd(c)(2).  That defined scope of an "appropriate transfer" includes specific requirements—e.g., that relevant medical records be sent to the receiving facility, and that the transfer be "effected through qualified personnel and transportation equipment."  Id. § 1395dd(c)(2)(C)–(D).  Time limitations on the transfer are conspicuously absent from the definition of the meaning of the term "appropriate transfer" and we are not allowed to add words to or rewrite a statute.  See Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1224 (11th Cir. 2009).  Finally, as explained above, Appellant's argument that the delay in transferring MS constituted a violation of the Act is squarely contradicted by our established case law that the Act did not create malpractice or tort remedies.  Harry v. Marchant, 291 F.3d at 774.  The Act "was not intended to be a federal malpractice statute."  Id. at 770.  Appellant's argument in effect urges us to read into the word "appropriate" all of the content of common law negligence law.  If allegedly unreasonable delay is actionable, so would be any other negligent care.  Just as the Act was not "designed to redress a negligent diagnosis by the hospital," Holcomb, 30 F.3d at 117, similarly the Act was not designed to redress allegedly negligent delay in transferring patients.  As our en banc decision in Harry v. Marchant repeatedly states, the Act was not intended to create federal malpractice remedies.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

6