[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 29, 2002
THOMAS K. KAHN
CLERK

No. 01-16106

D.C. Docket No. 00-00077-CV-DHB-1

JOANNE DIXON,

Plaintiff-Appellant,

versus

BURKE COUNTY, GEORGIA,
DANNY CRAIG, Individually and in his official capacity as District Attorney,
CHARLES PERRY, Individually and in his official
capacity as Foreman of the Burke County Grand Jury.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 29, 2002)**

Before TJOFLAT, WILSON and COWEN*, Circuit Judges.

_____
*Honorable Robert E. Cowen , U.S. Circuit Judge for the Third Circuit, sitting by designation.

COWEN, Circuit Judge:

In this civil rights action Plaintiff JoAnne Dixon ("Dixon") appeals from the grant of summary judgment in favor of all Defendants on Dixon's claim that she was subjected to gender discrimination, thereby depriving her of equal protection rights guaranteed under the 14th Amendment to the United States Constitution. Because there is an insufficient causal link between Dixon's harm and Defendants' conduct, we will affirm.

## I. BACKGROUND

### A. Facts

In the summer of 1999, a vacancy occurred on the Board of Education of Burke County Georgia (the "Board"). One of the Board members, a white male, passed away. The Georgia Secretary of State ordered that a Burke County Grand Jury select someone to fill the vacancy. The Grand Jury's chosen person would then be submitted to a Georgia Superior Court Judge who would make the final decision on whether that candidate would officially join the Board. A newspaper advertisement went out to solicit resumes for the open position on the Board.

Dixon is a white female who desired to fill the Board vacancy. With encouragement from Defendant/Appellee Charles Perry ("Perry"), she formally applied for the position. In total, eleven people applied for the position on the

2

Board.  Perry, a retired university professor, was the Grand Jury foreman during this time period.  The Grand Jury itself consisted of nineteen people.  Defendant/Appellee Danny Craig ("Craig"), the local District Attorney, acted as the official legal advisor to the Grand Jury during this Board member selection process.[1]

In what his appellate counsel deems "not his finest hour," Craig orally recommended to the Grand Jury that it should select someone who is the same race and gender as the Board member who passed away.[2]  Apparently, Craig made these comments not out of any gender animus, but because he felt that things would run smoother politically in the community if the racial and gender make-up of the Board was kept the same.  After making this suggestion, Craig further explained to the Grand Jury that "within the bounds of the law you can do anything you want to do insofar as appointing the replacement."  After making these remarks, Craig left the Grand Jury room.

---

[1]  Craig is the District Attorney for the Augusta Judicial Circuit, which includes Burke County.

[2]  Earlier, Perry had requested that Craig give his advice to the Grand Jury. Craig claimed he did not know the race or gender of the Board member who passed away.

At some point in time after Craig left the room, the Grand Jury Secretary commenced the selection process by reading all eleven of the applications. Some specific discussion amongst the grand jurors then took place regarding Dixon's application. Concern was expressed that Dixon's husband already sat on the Burke County Commission and that this might concentrate too much power in one local family. Concern was also voiced because Dixon did not send her own children to public school, and this might mean that she was not a supporter of the public school system.

At some point after this dialogue, Perry asked if the members were ready to make a nomination from the eleven applications. No nomination was made at that time. Since no nominations were forthcoming, Perry suggested that the Grand Jury follow Craig's advice. At that point, the Secretary of the Grand Jury read out just the white male applications. Perry then asked a second time for nominations, but again no nomination was made by the Grand Jury. Perry then nominated Gregory Chandler, a white male. Perry thought Chandler was a good candidate because he had three children in the public school system and supported the public school system. Chandler's nomination was seconded by a black female grand juror. Perry then asked for more nominations but none were forthcoming. The grand jurors then voted on Chandler's application, resulting in a 12-7 vote in Chandler's

4

favor. Thus, Chandler was recommended by the Grand Jury to the Superior Court Judge who made the ultimate decision on his application.

B. Procedural History

Plaintiff filed suit against Perry, Craig, and Burke County under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). She alleged that she was subjected to gender discrimination in her application to become a Board member. Following a period of discovery, Defendants filed for summary judgment in the United States District Court for the Southern District of Georgia. The Georgia District Court held in favor of all Defendants. The Court reasoned that both Perry and Craig were entitled to qualified immunity. With regard to Craig, the Court held that Dixon could not show the requisite constitutional tort element of causation because the vote of nineteen "independent" grand jurors severed the chain of liability between Craig's comments to the Grand Jury and Dixon not being chosen to fill the Board vacancy.

Likewise, with regard to foreman Perry, the Court reasoned that causation was lacking because he could not be held liable for the fact that 11 members of the Grand Jury concurred in the vote to select Chandler and because there was "no evidence that Perry exercised extraordinary influence over the votes of his fellow grand jurors." The Court also pointed out that while Perry may have followed

5

Craig's advice, he did so only *after* the Grand Jury initially considered *all* of the Board applications. The Court also felt that the fact that a state Judge had the ultimate decision helped "insulate[]" Defendants from § 1983 liability.[3]

With regard to Defendant Burke County, the District Court held that liability could not attach because Perry was not a "final policy maker" for the County and because there was no basis to believe that gender animus motivated the vote of anyone on the nineteen member Grand Jury but Perry.

## II. Discussion

The District Court had jurisdiction over this case under the provisions of 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291. Since we are asked to review a decision rendered on motions for summary judgment, our standard of review is *de novo*. *See Southpace Properties, Inc. v. Acquisition Group*, 5 F.3d 500, 504 (11th Cir. 1993).

### A. Perry and Craig

While the District Court addressed the issue of Perry's and Craig's § 1983 exposure under the heading of qualified immunity, we see it as relating more to the merits of Dixon's cause of action. The Constitution is the substantive fuel

---

[3] The District Court rejected Perry's and Craig's arguments that they were entitled to absolute immunity from suit.

powering § 1983, but its mechanical structure is similar to the common law of Torts. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 187 (1961). As with any common law tort, Plaintiff must establish an adequate causal link between the alleged harm and the alleged unlawful conduct. *See, e.g., Barts v. Joyner*, 865 F.2d 1187, 1195-96 (11th Cir. 1989). Without causation, Dixon's § 1983 case fails as a matter of law. The connection between conduct and harm must be legally sufficient to satisfy notions of common fairness and policy. In other words, a physical causal relationship, although existing at some level, may still be too remote to fairly permit the imposition of civil liability. The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers.

With these principles in mind, we fully agree with the District Court that the causation requirement delivers a blow from which Dixon's § 1983 case cannot recover. With regard to Perry, the acts of various other parties destroy any causal link between Perry's conduct and Chandler's selection for the Board vacancy. These acts include the votes of independent grand jurors and the action of an independent state Judge. Moreover, we note that after the vote took place, no grand juror objected to Chandler's name being presented to the Judge for final approval.

7

Had Perry actually coerced the grand jurors into selecting only a white male, or exercised extraordinary influence over them, a problem would be manifest. In that scenario, the grand jurors would have been deprived of their individual freedom of rational choice. The grand jurors would have become an extension of Perry himself, rendering a vote by multiple persons meaningless. But that is not the case here. The Grand Jury was given *free* opportunity to nominate Dixon (or any of the other candidates) on more than one occasion. It did not do so.

The case against Craig is even weaker. Craig did not vote on any applicant nor did he force the Grand Jury into an improper gender-motivated selection. He merely advised them that selecting someone of the same race and gender as the prior Board member would be a good idea since it would avoid local political controversy. Before leaving the room, Craig informed the grand jurors that they were free to do whatever they wanted to do within the bounds of the law.

The causal connection between Craig's words and Chandler's selection is severed by the intervening free, independent, and volitional acts of the Grand Jury and the state Judge. The Grand Jury understood that it did not have to accept Craig's advice. Indeed, the advice was rejected when the Grand Jury began its session by reading out and considering all eleven applications. This demonstrates

8

that, like Perry, Craig did not possess or assert any coercive force that subverted the individual free will of those who voted.

We also note that the imposition of civil liability in this case would necessarily mean that the government is *punishing* Craig for nothing more than voicing an opinion or recommendation. Thus, as our sister Circuits have acknowledged in other constitutional tort cases, Craig's own First Amendment rights are implicated. *See, e.g., Suarez Corp. Idus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (directly recognizing that an official's *own* First Amendment rights warrant consideration in a § 1983 retaliation case where the official is being sued for speaking) (emphasis added).

B. § 1983 Municipal Liability of Burke County

Plaintiff seeks to hold Burke County liable on a theory of § 1983 municipal liability through the actions of Perry and the Grand Jury. Plaintiff argues that summary judgment was improperly granted in favor of Burke County because a "jury could conclude that only white male candidates were ultimately considered by the Grand Jury and that the confirming of Mr. Perry's nomination was tainted by gender considerations." Appellant's Brief at 18. For the reasons expressed below, Burke County cannot be liable on this record.

It is well-settled that a local government body may only be liable under § 1983 if action pursuant to official policy caused a constitutional tort. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). Only those municipal officers who have final policymaking authority may, by their actions, subject the government to such liability. *Id.*

For purposes of summary judgment, the District Court assumed that the Grand Jury was a final policymaker for Burke County but found no liability on the facts presented.[4] We are constrained to agree. As the District Court cogently recognized, there has not been a sufficient showing that any member of the Grand Jury, *other* than Perry, may have been improperly motivated by gender considerations, as opposed to the substantive merits of the applicants. A jury would have to resort to pure speculation as to why the other grand jurors acted as they did. As noted above, we see nothing in the record to indicate that Perry had any coercive effect on those that voted. In sum, no municipal liability can attach for one tainted vote out of twelve cast for Chandler. *See Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001); *Church*, 30 F.3d at 1343-44.

The judgment of the District Court will be AFFIRMED.

---

[4] We agree with the District Court that Perry was not a final policy maker for the County. He only had one vote in the selection process. A majority vote was needed to make a selection to recommend to the state Judge.