**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10120

_____

SANTORI LITTLE,
on behalf of herself and those similarly
situated as described below,
CHARLES GRAY,
on behalf of himself and those
similarly situated as described below,
TAMARA KHELIFA,
on behalf of herself and those similarly
situated as described below,

Plaintiffs-Appellants,

*versus*

THE CITY OF VALLEY, ALABAMA,
AMWASTE, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:23-cv-00044-RAH-KFP

_____

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

PER CURIAM:

Santori Little, Charles Gray, and Tamara Khelifa appeal the dismissal of their section 1983 and Racketeer Influence and Corrupt Organizations Act (RICO) claims against City of Valley, Alabama (Valley), and AmWaste, LLC (AmWaste). This appeal asks us to determine whether Valley had a custom or policy of jailing residents and setting excessive bail for failure to pay garbage collection fees in violation of the Eighth and Fourteenth Amendments; whether Valley and AmWaste, the company retained to perform garbage collection services, conspired to commit the alleged Constitutional violations; and whether the contractual relationship between Valley and AmWaste amounted to an "association-in-fact enterprise" for the purposes of a RICO claim.

After careful review and with the benefit of oral argument, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

This case is about Valley's collection of fees for picking up garbage.   Valley is a municipality that charges its residents a monthly garbage collection fee.   Though Valley charges the fee, it outsources the actual garbage pickup to a private company.   Since 2019, that company has been AmWaste.   AmWaste only handles garbage collection, and its fee is not tied to the amount of garbage bills actually paid.   Valley handles all billing and collection and retains what remains after AmWaste is paid.   When residents do not pay, Valley files a criminal misdemeanor complaint against them for nonpayment.

After Little, Gray, and Khelifa failed to pay their garbage bills, Valley filed misdemeanor complaints against them with the District Court of Chambers County, Alabama—a state court presided over by state judges.   Each complaint charged Little, Gray, or Khelifa with violating either section 22-27-3 or 22-27-5 of the Alabama Code.   Though Valley filed the charges, a state prosecutor from the District Attorney's office—who retained full authority over the case, including over whether to pursue prosecution—prosecuted them.

---

[1] The following facts are taken from the second amended complaint and the state court records in which the district court took judicial notice.  Consistent with the standard of review for motions to dismiss, we construe the facts in the light most favorable to the plaintiffs. *See Newbauer v Carnival Corp.*, 26 F.4th 931, 933 n.1 (11th Cir. 2022).

After the three were charged, a state district court judge or magistrate issued warrants for their arrests. And once they were arrested, they were jailed and ordered to post $2,500 bail. All three pleaded guilty.

Little, Gray, and Khelifa sued Valley and AmWaste to challenge the criminal misdemeanor proceedings they were subjected to. Their complaint asserted three section 1983 claims. First, it alleged that Valley violated the Eighth Amendment by setting excessive bail of $2,500. Second, it maintained that Valley violated the Due Process Clause of the Fourteenth Amendment by jailing Little, Gray, and Khelifa because Alabama law does not authorize imprisonment for non-payment of garbage bills.[2] And third, the complaint alleged a claim against Valley and AmWaste for conspiracy to violate section 1983 based on the same Constitutional violations. Finally, Little, Gray, and Khelifa brought a RICO claim under 18 U.S.C. section 1964(c) against Valley and AmWaste, contending that Valley and AmWaste's contractual relationship was an "association in fact" and that they engaged in a pattern of racketeering by extorting garbage collection fees from residents.

Valley and AmWaste moved to dismiss the complaint. They argued that the section 1983 claims against Valley failed under

---

[2] Little, Gray, and Khelifa also allege that Valley used the "threat of jail" to collect fees. The district court found—and Little, Gray, and Khelifa do not dispute—that the complaint simply connects this allegation to Valley's possible "initiation of [the] proceedings." Little, Gray, and Khelifa do not allege actual threats were directed at them.

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the state district court judges and magistrates who presided over the cases were state officials exercising state judicial power, not municipal officials.  They further argued that no custom or policy caused the alleged constitutional violations, as the judges independently ordered Little's, Gray's, and Khelifa's arrests and set their bail.  As to the RICO claim, Valley and AmWaste maintained that the complaint did not allege a RICO enterprise because it only alleged a shared purpose to make money.

The district court agreed with Valley and AmWaste and dismissed the complaint with prejudice.  It determined that the complaint failed to state a claim under *Monell* for violating the Eighth and Fourteenth Amendments for two reasons: (1) the state district court judges and magistrates who presided over Little's, Gray's, and Khelifa's cases were acting on behalf of the state, not Valley, and (2) the complaint did not allege causation because the state district court judges and magistrates independently ordered Little's, Gray's, and Khelifa's arrests and set their bail.  The court likewise dismissed the section 1983 conspiracy claim, holding that the complaint did not allege facts sufficient to show that Valley and AmWaste reached an understanding to violate their Constitutional rights.  Finally, the district court concluded that the complaint "fail[ed] to state a plausible RICO claim" because it simply "attempt[ed] to recast [Valley and AmWaste's] contractual relationship as a RICO enterprise."

6                          Opinion of the Court                    24-10120

## II.    STANDARD OF REVIEW

We review de novo a district court's dismissal for failure to state a claim. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

## III.    ANALYSIS

On appeal, Little, Gray, and Khelifa argue that they plausibly alleged their section 1983 and RICO claims.[3]    We address each claim in turn.

### A.  Section 1983

Little, Gray, and Khelifa contend that the district court erred when it determined that Valley could not be held liable under *Monell*.  We disagree.

"In [*Monell*], the Supreme Court held that a municipality can be held liable under [section] 1983." *Underwood v. City of Bessemer*,

---

[3] Valley identified several additional grounds on which, in its view, the district court could have dismissed the section 1983 claims, and it renews those arguments on appeal.  Two challenge our jurisdiction.  First, Valley argues that the *Rooker-Feldman* doctrine bars these claims.  But that narrow doctrine does not apply here because Little, Gray, and Khelifa "ask[] us to consider whether their constitutional rights were violated during the proceedings and whether they are entitled to damages for those violations"—not whether they are entitled to "relief from the judgment of the state court." *Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021).  Second, Valley argues that Little lacks standing to bring her claims because, it argues, the statute of limitations on her claims had expired before this case was filed.  But a "statute of limitations defense … is not 'jurisdictional.'" *Day v. McDonough*, 547 U.S. 198, 205 (2006).  So we have jurisdiction over her claims.  *See id.*

11 F.4th 1317, 1333 (11th Cir. 2021) (citing *Monell*, 436 U.S. at 658). To impose section 1983 liability on a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id*. (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Also, "a plaintiff must show that the [municipality] has authority and responsibility over the governmental function at issue" before the municipality can be held liable under *Monell*. *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020) (citation modified). So, a "critical and threshold question is whether" the officials who performed the challenged governmental function acted "on behalf of the" municipality. *Id*. Generally, a "judge acts on behalf of the state, and not on behalf of the municipality, when he engages in judicial acts for the purpose of applying or enforcing a state law." *Id*. at 676–77 (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)).

Here, Valley did not have authority or responsibility for the state court warrants and orders setting bail. As Little, Gray, and Khelifa concede in their briefing, the state prosecutors and judges were directly responsible for exercising prosecutorial discretion and issuing court orders, not Valley. Indeed, the state district court judges and magistrates acted on behalf of the state when they issued their orders because they serve on a state trial court whose jurisdiction is established by state law. *See* Ala. Code § 12-12-32(a);

*see also Patton v. State*, 964 So. 2d 1247, 1250 (Ala. Crim. App. 2007) ("Just as a circuit court … derives its jurisdiction from the Alabama Constitution and the Alabama Code, so too do the district courts in Alabama's court system."). And Little's, Gray's, and Khelifa's misdemeanor cases all charged them with violations of the Alabama Code. So, the state prosecutors and courts were enforcing and applying state law, and Valley did not have authority or responsibility over their actions. *See Teagen*, 949 F.3d at 676–78; *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc) ("[L]ocal governments can never be liable under [section] 1983 for the acts of those whom the local government has no authority to control.").

Little, Gray, and Khelifa respond that the governmental function at issue is Valley's custom or policy of filing misdemeanor complaints against residents who do not pay, which they say caused the state judges to order their arrests and set excessive bail. That custom or policy, they argue, is directly attributable to Valley and "began the causal chain" leading to those orders and their injuries.

But in all section 1983 cases, "[t]he causal relation" between the defendant's action and the plaintiff's injuries "does not exist when the continuum between [the d]efendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002). In *Coley-Pearson v. Martin*, we recently "explain[ed] how to determine whether a deliberative, autonomous actor

breaks the chain of causation between a defendant's actions and a plaintiff's injuries." -- F.4th --, 2025 WL 2910579, at *5 (11th Cir. Oct. 14, 2025). "[T]he key question … is whether the intervening actor retained his 'individual freedom of rational choice' and acted according to his 'individual free will.'" *Id.* at *7 (citing *Dixon*, 303 F.3d at 1275). "If so, the intervening actor's decisions and actions break the causal chain that would otherwise exist between the defendant's actions and the plaintiff's injuries." *Id.* "If not, then whatever causal chain there is between the defendant and the plaintiff remains." *Id.*

Here, though Valley initially filed the misdemeanor charges, Little's, Gray's, and Khelifa's arrests and bail amounts stemmed from "the conduct of deliberative and autonomous decision-makers." *See Dixon*, 303 F.3d at 1275. At all times, the state judges, magistrates, and prosecutors who presided over the cases and prosecuted them retained the "individual free will" to withhold prosecution, not make the arrest, or set bail at a lower amount. *See Coley-Pearson*, 2025 WL 2910579, at *7; *see also Turner v. Williams*, 65 F.4th 564, 590 (11th Cir. 2023) (holding that sheriff's deputy did not allege sheriff's retaliatory animus caused his arrest when an independent prosecutor and judge effectuated his arrest); *Carruth v. Bentley*, 942 F.3d 1047, 1056 (11th Cir. 2019) (holding that former governor did not cause the alleged injury when a state agency "s[a]t in the middle of the causal chain").[4] So, the intervening conduct of the

---

[4] Proving the point, and as the district court noted, the district attorney for Chambers County recently announced that his office would "not prosecute

independent state actors broke the causal chain between Valley's misdemeanor complaints and the alleged Constitutional violations.

The complaint, thus, did not allege that Valley caused the injuries, and the district court properly dismissed the section 1983 claims against Valley. Moreover, with no underlying violation, Little, Gray, and Khelifa's section 1983 conspiracy claim was also properly dismissed. *See Spencer v. Benison*, 5 F.4th 1222, 1234 (11th Cir. 2021).

## B. RICO

Little, Gray, and Khelifa next argue that the district court erred in dismissing their RICO claim because Valley and Am-Waste's contractual relationship for garbage services is sufficient to plead a RICO enterprise. We disagree.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A RICO plaintiff must prove four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th

---

residents of [Valley] for the nonpayment of unpaid garbage fees." That the district attorney did not act sooner does not transform his freewill into conduct orchestrated by Valley and the complaint does not plead anything suggesting otherwise.

Cir. 2013). We agree with the district court that Little, Gray, and Khelifa did not sufficiently plead the second element—the existence of a RICO enterprise.

"A RICO enterprise is 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (quoting 18 U.S.C. § 1961(4)). "To plead an association-in-fact enterprise," "a plaintiff *must* allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* (emphasis in original) (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017)).

"The purpose prong" requires a plaintiff to allege "'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). But "a generally shared interest in making money will not suffice." *Id.* If "the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* At bottom, the complaint must allege facts that "plausibly support the inference that the defendants were collectively trying to make money" through the alleged RICO predicate acts "as opposed to the 'obvious alternative explanation' … that they were simply

trying to make money." *Id.* at 1212 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). Allegations that a defendant engaged in "wholly innocent activity undertaken as a course of regular business," *see Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1353 (11th Cir. 2016), and did not "receive[] any money in connection with the alleged scheme," *see Cisneros*, 972 F.3d at 1213, are not enough to allege a shared purpose.

Little, Gray, and Khelifa have not pleaded a shared purpose between Valley and AmWaste to make money through the alleged extortion of garbage collection fees. To start, they concede in their briefing that "the necessary *mens rea*" for a RICO conspiracy claim "is not attributable to [Valley]," so their RICO conspiracy claim against Valley must be dismissed. As to AmWaste, Little, Gray, and Khelifa failed to plead AmWaste's shared purpose in receiving anything more than its fixed fee for its garbage collection services. *Cf. Ray*, 836 F.3d at 1353 ("That Objectart helped set up a platform that Spirit independently misused does not give rise to a plausible inference that Objectart and Spirit acted with the common purpose …."). AmWaste's trash collection was "a wholly innocent activity undertaken as a course of regular business" for which AmWaste "simply receiv[ed] a fee for the anodyne services it provided." *Id.* So, the complaint leaves us only with "the 'obvious alternative explanation[]'" for Valley and AmWaste's association: that Valley wanted its trash picked up and AmWaste wanted to make money doing it. *Cisneros*, 972 F.3d at 1212 (quoting *Twombly*, 550 U.S. at 567).

## IV.    CONCLUSION

The district court correctly determined that the second amended complaint did not state a *Monell* claim against Valley and failed to allege Valley and AmWaste engaged in a RICO enterprise. We therefore affirm its order dismissing the second amended complaint.

**AFFIRMED.**